UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| TIMOTHY J. MCILWAIN, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 3:23-CV-130-CHB |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION AND** |
| BROOKE BERRY, *et al.*, ) | **ORDER** |
| ) | |
| Defendants. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on Plaintiff Timothy J. McIlwain's Motion for Leave to File a Supplemental Complaint. [R. 55]. As previously instructed by the Court, the motion contains a redline markup indicating each change from the original Complaint. *See* [R. 55-4]; [R. 51, p. 10 ("McIlwain must identify ***every single change*** from the original Complaint, . . . so as to allow the Court to determine the substantive amendments that are being sought. McIlwain would also be required to file a redline version comparing the original Complaint with his proposed Amended Complaint.") (emphasis in original)]. The motion has been fully briefed. *See* [R. 56 (Berry's response)]; [R. 57 (McIlwain's reply)]; [R. 58 (Berry's sur-reply)]. For the following reasons, McIlwain's motion will be granted.

**I.    BACKGROUND**

For the factual background of this action, the Court finds it most efficient to quote from the Court's prior Memorandum Opinion and Order. *See* [R. 51]. As the Court explained:

> The record in this case reveals the parties have a long and contentious history, both personally and litigiously. According to the Complaint, McIlwain and Berry had been in a romantic relationship beginning in 2009. *See* [R. 1, § III ¶ 1]. In 2016, the couple had a child. *See id.* ¶ 2. After the birth of their daughter, Berry proposed marriage to McIlwain, who "demurred to taking such a drastic step at that time," because he had concerns about Berry's mental health. *See id.* ¶¶ 6–7. McIlwain

claims that, at that point, Berry devised a scheme to prevent him from participating in their child's life. *See, e.g.*, *id.* ¶ 9.

Part of that scheme, according to the Complaint, was for McIlwain to move to Louisville from New York/New Jersey to enter into a real estate venture with Berry. *See id.* ¶ 9(A)–(G). McIlwain alleges that he put money toward the equity and closing costs for the purchase of the home and that he paid for costly renovations. *See id.* ¶ 9(E)–(G). Another part of that scheme, according to the Complaint, was that "Berry reported to schools, doctors, government agencies, bar associations, Courts, Police, Sheriffs and accusing Tim of everything from drug use to family violence, to molestation of his daughter and a relative." *See id.* ¶ 9(Q).

The parties' custody dispute was heard in state court, and the Complaint details how those proceedings became increasingly antagonistic, including involving an incident in which Berry filed for an emergency protective order against McIlwain in May 2019 claiming child neglect and domestic violence. *See id.* ¶¶ 10–15. The family court granted the domestic violence order ("DVO") but denied Berry's motion pertaining to neglect. *See id.* ¶ 12. In November 2019, the Cabinet for Health and Family Services "concluded its investigation and found no risk; zero severity and unsustained the charges with no reason for follow-up contact with [the Cabinet]." *See id.* ¶ 16.

McIlwain also alleges that, "[f]rom February 27, 2019, until present, Berry attempted to have Tim arrested by making false statements to the police and other government agencies," *see id.* ¶ 22, and that Berry worked in concert with her state court counsel to create situations that made it appear as if McIlwain violated the DVO, *see id.* ¶¶ 23–25. According to the Complaint, on one incident, Berry and her counsel claimed McIlwain had violated the DVO when attempting to pick up a transcript from a courthouse. *See id.* ¶ 31. Berry and her counsel called the sheriff's office, which responded and involuntarily restrained McIlwain and took him "to jail to spend the night in a cell with 36 inmates and made [him] to sleep on a metal bunk bed with no padding." *Id.* ¶ 33. McIlwain alleges that, "[o]n the basis of this contrived incident, [he] was incarcerated and a complaint to Kentucky Child Protective Services was filed on August 2019." *Id.* ¶ 34. The charges against McIlwain were ultimately dismissed [with prejudice]. *See id.* ¶ 35.

The parties reached a settlement agreement in their custody case . . . and from November 7, 2020, to January 17, 2021, McIlwain had unsupervised visits with his daughter. *See id.* ¶¶ 41–42. However, he alleges that, during this entire period, "Berry constantly filed false motions" and "also created videos of her daughter in the nude for the purpose of accusing Tim of molest[ing]" the child. *See id.* ¶ 42. The Complaint references specific false statements that McIlwain alleges Berry made against him to workers from Child Protective Services following the finding of no risk against him in November 2019. *See id.* ¶¶ 43–44. McIlwain alleges that Berry continued to bring false charges against him on dates in March 2021, July 2021, July 2022, and January 2023. *See id.* ¶ 45.

McIlwain initiated the present action on March 16, 2023, through the filing of his Complaint, naming Berry and John Doe 1-5 as defendants. *See id.* at p. 1. Although McIlwain is an attorney licensed in other jurisdictions, he is proceeding pro se in this matter. *See id.*; *id.* at § III ¶ 1. Through his original Complaint, McIlwain alleges the following causes of action: defamation (Count I); intentional infliction of emotional distress (Count II); punitive damages (Count III); breach of the covenant of good faith and fair dealings (Count IV); promissory estoppel (Count V); and unjust enrichment (Count VI). *See id.* at §§ IV–IX. Notably, this is not the first lawsuit McIlwain has filed in this District based on similar allegations. *See McIlwain v. Dodd*, No. 3:21-CV-406, 2022 WL 492986 (W.D. Ky. Feb. 16, 2022), *aff'd*, No. 22-5219, 2022 WL 17169006, at *1 (6th Cir. Nov. 22, 2022) (affirming district court's dismissal of McIlwain's claims against Berry's attorney in state custody proceedings for failure to state a claim).

In May 2023, Berry filed a motion to dismiss, [R. 11], and McIlwain filed a motion for entry of default, [R. 12]. Upon review of the parties' briefing, the Court denied McIlwain's motion for entry of default as moot (because Berry had since participated in the action). *See* [R. 19, p. 5]. Additionally, given the domestic overtones of McIlwain's Complaint, the Court ordered him to show cause regarding the basis for subject-matter jurisdiction in this action. *See id.* at 2–4. Specifically, the Court ordered McIlwain to file a written submission addressing whether the domestic relations exception to federal diversity jurisdiction applied in this case, and if not, why that was so. *See id.* at 4; *see also Chevalier v. Est. of Barnhart*, 803 F.3d 789, 791–92 (6th Cir. 2015) ("[T]he so-called domestic-relations exception to federal diversity jurisdiction deprives federal courts of jurisdiction to adjudicate 'only cases involving the issuance of a divorce, alimony, or child custody decree.'") (quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 704 (1992)). The Court also observed that certain other doctrines might be implicated. *See* [R. 19, p. 4] (citing *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 482 & 482 n.16 (1983); *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413, 415–16 (1923)). Because it requested information from McIlwain regarding jurisdiction, the Court denied Berry's motion to dismiss without prejudice. *See id.* at 6.

Ultimately, the Court determined that subject-matter jurisdiction was present in this action and that the domestic relations exception did not apply. *See* [R. 25, p. 2] ("McIlwain timely filed his memorandum in support of jurisdiction, and in it, he represents that he does not seek modification of a child custody decree . . . Given McIlwain's representations and the nature of his causes of action, which seek damages for state law tort claims, the Court determines that the domestic relations exception is inapplicable to the facts of this case.") (internal citations omitted). The Court then gave Berry a renewed opportunity to file a motion to dismiss. *See id.* at 6. Berry timely filed such a motion, arguing that each of McIlwain's claims fail as a matter of law. *See* [R. 27]. At the same time that McIlwain filed a response to Berry's motion to dismiss, [R. 33], he also filed a motion to amend his Complaint. *See* [R. 32]. Additionally, Berry filed a motion to strike several of McIlwain's filings. *See* [R. 42].

[R. 51, pp. 1–5 (formatting of record citations updated) (cleaned up)].

Because McIlwain's Motion for Leave to File First Amended Complaint, [R. 32], if granted, would have rendered moot Berry's Motion to Dismiss, [R. 27], the Court first addressed McIlwain's motion. [R. 51, p. 10]. The Court noted that the parties' briefing on that motion was "substantively lacking" and the record "ha[d] been a nightmare to decipher." *Id.* As a result, McIlwain's motion was denied without prejudice, and he was permitted to renew his motion. *Id.* at 10–11. The Court then denied Berry's Motion to Dismiss without prejudice and deferred her time to file an answer. *Id.* at 11. The Court also granted Berry's Motion to Strike and eliminated duplicative record entries. *Id.*

McIlwain's initial attempts to comply with the Court's order involved duplicative and unclear filings, as well as violations of Federal Rule of Civil Procedure 5.2(a) by including his minor daughter's full name and additional information which should be redacted. *See* [R. 52]; [R. 53]; [R. 54]. The Court, once again, directed McIlwain to file a renewed motion for leave to amend and set a briefing schedule. [R. 54].

McIlwain filed his renewed motion on July 17, 2024. [R. 55]. Berry responded, [R. 56], McIlwain replied, [R. 57], and Berry filed a sur-reply. [R. 58]. Berry also filed a Motion for Extension of Time to File a Response/Reply, because her sur-reply was filed one day late, and McIlwain had threatened to file a motion to strike it. *See* [R. 59]. The Court granted the motion. [R. 60]. As such, McIlwain's Motion for Leave to File a Supplemental Complaint is ripe for the Court to rule.

## II. LEGAL STANDARD

While styled as a Motion for Leave to File a Supplemental Complaint, McIlwain's motion attempts to both supplement *and* amend his prior pleadings. *See generally* [R. 55].

"[W]ithin the meaning of Rule 15, supplements relate to events that have transpired *since* the date of the original pleading, while amendments typically rely on matters in place *prior* to the filing of the original pleading." *Bormuth v. Whitmer*, 548 F. Supp. 3d 640, 646 (E.D. Mich. 2021) (emphasis in original) (citing *United States v. Hicks*, 283 F.3d 380, 385 (D.C. Cir. 2002)). However, "'the same standard of review and rationale applies . . .' to a motion to amend under Fed. R. Civ. P. 15(a) and a motion to supplement under Fed. R. Civ. P. 15(d)." *Id.* at 646 n.4 (cleaned up) (quoting *Spies v. Voinovich*, 48 F. App'x 520, 527 (6th Cir. 2002)).

"Federal Rule of Civil Procedure 15(a) states that leave to amend a pleading shall be freely given 'when justice so requires.'" *Moss v. United States*, 323 F.3d 445, 476 (6th Cir. 2003) (quoting Fed. R. Civ. P. 15(a)). Rule 15(d) similarly allows supplementation on "just terms." Fed. R. Civ. P. 15(d). The Sixth Circuit has found that "courts give rules of this kind a liberal construction, always trying where possible to see that cases are decided on their merits." *McHenry v. Ford Motor Co.*, 269 F.2d 18, 25 (6th Cir. 1959) (discussing Rule 15(d)); *Cooper v. Am. Emps. Ins. Co.*, 296 F.2d 303, 306 (6th Cir. 1961) (applying *McHenry*, 269 F.2d at 25, to Rule 15(a)). "Denial may be appropriate, however, where there is 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.'" *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002) (quoting *Foman v. Davis,* 371 U.S. 178, 182 (1962)).

"[T]he district court may deny leave to amend if the proposed amendment would be futile." *Moss*, 323 F.3d at 476. "[F]utility of amendment . . . is simply defined as an amendment to the complaint that would not survive a [Federal Rule of Civil Procedure] 12(b) motion to dismiss." *500 Assocs., Inc. v. Vt. Am. Corp.*, 496 F. App'x 589, 593 (6th Cir.

2012) (citing *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010)). In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Moreover, delay alone does not ordinarily give reason to deny leave to amend. "At some point, however, delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party." *Morse*, 290 F. 795, 800 (cleaned up); *see also Tefft v. Seward*, 689 F.2d 637, 639 n.2 (6th Cir. 1982) ("Delay that is neither intended to harass nor causes any ascertainable prejudice is not a permissible reason, in and of itself to disallow an amendment of a pleading."). Moreover, "[l]eave to amend may be denied if it is brought in bad faith or for dilatory purposes." *Consol. Rail Corp. v. Grand Trunk W. R.R. Co.*, No. 09-CV-10179, 2012 WL 12995491, at *5 (E.D. Mich. Jan. 19, 2012) (citing *Nat'l Bank of Wash. v. Pearson*, 863 F.2d 322, 328 (4th Cir. 1988) ("holding that an amendment should be denied if its purpose is to use delay to harass the party's opponent")).

## III.   ANALYSIS

McIlwain's amended complaint introduces additional factual bases for his tort and contract claims against Berry, as well as adding an explicit claim for breach of contract. *See* [R. 55, pp. 2–3]. In particular, he seeks to supplement his defamation and intentional infliction of emotional distress claims with the following factual allegations post-dating his initial complaint: (1) Berry made additional false statements to law enforcement and other government entities, which McIlwain discovered on February 15, 2024; (2) on May 24, 2024, the New Jersey Office of Attorney Ethics advised McIlwain it was dismissing Berry's complaint against him without

charges because it was meritless; (3) Berry made false statements to McIlwain's employer, Temple University, resulting in his contract not being renewed; (4) on December 11, 2023, Berry fraudulently changed their daughter's name to remove McIlwains's last name, which had appeared on her birth certificate; and (5) McIlwain was diagnosed with PTSD in February 2024 stemming from his brief 2019 incarceration. *Id.* Additionally, McIlwain's amended complaint "provided more specificity to the contract claims and added a Breach of Contract claim" to cure anticipated defenses. *Id.* at 4. Thus, McIlwain seeks to *supplement* his complaint under Rule 15(d) by adding new facts in support of his defamation and intentional infliction of emotional distress claim, and he seeks to *amend* his complaint under Rule 15(a) by clarifying his previous contract claims and adding a new contract claim.

McIlwain asserts permitting amendment and supplementation "will avoid piecemeal litigation, allow a prompt and efficient resolution of the entire controversy between the parties, and impose no prejudice on [Berry]." *Id.* Berry opposes the motion on two grounds, arguing: (1) McIlwain's failure to amend his pleading as a matter of course within twenty-one days of her motion to dismiss—at which point all newly alleged events had occurred—is "dilatory" and "[t]he real motive appears to be compelling further briefing by [Berry] on a needless motion"; and (2) the additional contract claims would be futile. [R. 56, pp. 3–4]. Stated another way, Berry challenges McIlwain's attempt to supplement his defamation and intentional infliction of emotional distress claims due to his allegedly dilatory motive and bad faith, and she challenges his attempt to amend his contract claims because, according to Berry, the proposed amendments are futile. The Court will address these arguments in turn.

### A.     Undue Delay, Bad Faith, and Dilatory Motive

Denial of a motion to amend or supplement "may be appropriate where there is 'undue delay, bad faith or dilatory motive on the part of the movant.'" *Morse*, 290 F.3d at 800 (cleaned up) (quoting *Foman*, 371 U.S. at 182).

Berry opposes McIlwain's attempt to supplement the factual underpinnings of his defamation and intentional infliction of emotional distress because

> Plaintiff admits awareness of the alleged events on the dates provided in the proposed amended complaint. As a matter of course, Plaintiff could have supplemented his Complaint with these allegations within 21 days of service of Defendant's motion. Plaintiff's failure to do so is dilatory and operates to elicit briefing by Defendant. Plaintiff provides no reason for the delay in supplementing the Complaint . . . [and] [t]he real motive appears to be compelling further briefing.

[R. 56, p. 3]. From this, the Court understands that Berry is arguing undue delay, bad faith, and dilatory motive. In his reply, McIlwain alleges that "there is no 'undue delay' . . . , Defendant is unable to demonstrate any prejudice . . . , [and] [t]here is no bad faith on the part of the [Plaintiff]." [R. 57, p. 3].

The Court first notes that plaintiffs may not *supplement* their complaint as a matter of right. *See § 1504 Supplemental Pleadings—In General*, 6A Fed. Prac. & Proc. Civ. § 1504 (3d ed.) ("Under Rule 15(a)(1) certain amendments may be made as a matter of course within stated time periods, whereas *all supplemental pleadings require leave of court* under Rule 15(d).") (emphasis added); *compare* Fed. R. Civ. P. 15(a) ("A party may amend its pleading once as a matter of course . . ."), *with* Fed. R. Civ. P. 15(d) ("On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading . . ."). As such, McIlwain could not have added these later-dated allegations as a matter of course upon receipt of Berry's motion to dismiss, despite her arguments to the contrary. *See, e.g.*, *Alward v. Fed. Bureau of Prisons*, No. 1:24-CV-461, 2024 WL 3982525, at *2 (W.D. Mich. Aug. 29, 2024) ("A plaintiff,

in the early stages of a case, may file an amendment 'once as a matter of course,' Fed. R. Civ. P. 15(a)(1); thereafter, he or she may only do so 'with the ... court's leave,' Fed. R. Civ. P. 15(a)(2). To file a supplemental complaint, however, a plaintiff must always seek leave of court."). While McIlwain's filing of his Motion for Leave to File a Supplemental Complaint may have otherwise been dilatory or unduly delayed, which the Court addresses below, it was not so for failure to do so as a matter of course (an option unavailable to McIlwain under the Rules of Civil Procedure). Moreover, it does not, without more, demonstrate bad faith—or a true motive to simply elicit expensive briefing—because McIlwain had no choice under the rules but to file a motion regarding his supplemented allegations. *See* Fed. R. Civ. P. 15(d) (permitting supplementation only "on motion and reasonable notice.").

As explained above, Berry has not alleged that McIlwain's *amendment* of the contract claims outside the time period for amendment as a matter of course was dilatory, unduly delayed, or done in bad faith.[1] Nonetheless, the Court will consider the motion in its entirety when evaluating undue delay, bad faith, and dilatory motive.

### 1.     Undue Delay and Prejudice

Delay, on its own, even an unjustifiable delay, is "an insufficient reason for denying leave to amend." *Consol. Rail Corp.*, 2012 WL 12995491, at *5 (citing *Moore v. City of Paducah*, 790 F.2d 557 (6th Cir. 1986)). For delay to be "undue," there must be "at least some significant showing of prejudice to the opponent." *Id.* (quoting *Moore*, 790 F.2d at 562). Courts have found prejudice where plaintiffs have sought leave to amend after discovery has closed or

---

[1] The Court does note, as it has before, [R. 51, p. 9 n.3], that if McIlwain's motion had been filed a day earlier, he would not have had to ask the Court for leave and would have been able to *amend* as a matter of right under Rule 15(a)(1). *Compare* [R. 27] (filed February 22, 2024), *with* [R. 32] (filed May 15, 2024); *see also* Fed. R. Civ. P. 15(a)(1) ("A party may amend its pleading once as a matter of course no later than . . . 21 days after service of a motion under Rule 12(b).").

the dispositive motions deadline has passed. *See id.* (citing *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999) ("affirming district court's denial of amendment where the plaintiff sought to amend after discovery and dispositive motion deadlines had passed and a motion for summary judgment had been filed")); *Moore*, 790 F.2d at 560 (collecting cases). Courts have also found prejudice in amending a complaint to propose a new theory after losing on another theory at the Court of Appeals. *See Moore*, 790 F.2d at 560 (citing *Troxel Mfg. Co. v. Schwinn Bicycle Co.*, 489 F.2d 968. 971 (6th Cir. 1973). However, even after the close of discovery and a ruling on a motion for summary judgment, the court in *Consolidated Rail Corporation* found no undue delay in plaintiff's filing of their third amended complaint because it did not address the same issues as the previous summary judgment motion and involved the same arguments as remaining allegations. 2012 WL 12995491, at *5; *cf. Moore*, 790 F.2d at 560 (quoting *Hayes v. New Eng. Millwork Dists., Inc*, 602 F.2d 15, 20 (1st Cir. 1979) (noting that the *Hayes* court found prejudice when "the amended charge was 'not contemplated by the original complaint'").

Here, both the amendments and supplementations relate to the original complaint and discovery has not yet begun. As the Court explains below, there has been no prejudicial undue delay.

As previously explained, Berry does not argue the *amendment* was unduly delayed. Even if she had, however, the delay would have been a singular day because, had the amendment been filed a day earlier, it could have been done as a matter of course, rather than a motion. *See* [R. 56, p. 3]. The only prejudice Berry asserts is her needing to file a responsive briefing. However, the arguments Berry raised against the amended breach of contract claim mirror those already made in her motion to dismiss regarding the related claims. *Compare* [R. 56, p. 4 (arguing the statute of frauds makes the amended claim futile)], *with* [R. 27, pp. 7 ("Plaintiff's

promissory estoppel and unjust enrichment claims are barred by the statute of frauds") (cleaned up)]. The Court finds little prejudice to Berry under these circumstances. *See Consol. Rail. Corp.*, 2012 WL 12995491, at *5 (finding no prejudice to defendant when plaintiff's amendment involved the same underlying facts and defendant's existing arguments applied).

Moreover, the breach of contract claim directly relates to the other contract-related claims in the original complaint. *See generally* [R. 55-4 (redline comparing the initial and amended complaints)]. Berry's earlier motion to dismiss suggested that, without a breach of contract claim, McIlwain's claim for breach of the covenant of good faith and fair dealing failed. *See* [R. 27, p. 11]. As such, McIlwain intended the amendment "to cure any position that an implied covenant of good faith and fair dealings needs to be accompanied with a breach of contract/of the agreement claim." [R. 55, p. 4 (cleaned up)]; *see also McHenry*, 269 F.2d at 24 (calling it "usual practice . . . to permit amendments freely to cure defective or imperfect pleadings"). Therefore, the amendment is not prejudicial because Berry herself contemplated a breach of contract claim regarding the initial complaint and the litigation is in its beginning stages.

Berry suggests the supplementation was delayed because McIlwain had knowledge of the events underlying the additional factual allegations before he moved to supplement the complaint. *See* [R. 56, pp. 3–4]. McIlwain alleges he learned of the supplemented facts between February and May 2024.[2] [R. 55, pp. 2–3]. McIlwain first attempted to file a Motion to Amend on March 4, 2024, [R. 29], and attempted to file another on July 9, 2024, [R. 52]. McIlwain filed the instant Motion on July 17, 2024. [R. 55]. Therefore, any delay was, at most, five months (February to July). Berry cites no legal authority that suggests such a delay was undue and does not identify how, if at all, it causes her prejudice. For example, she "cannot point to

---

[2] As the Court explains below, the record and briefing is insufficient to rule on the timeliness of the Temple University claim. *See* [R. 56, p. 3 n.1 (arguing the claim is time-barred)]; [R. 57, pp. 6–7].

- 11 -

any discovery deadlines that have lapsed, or any trial schedule that would be delayed; nor can [she] direct the Court to any additional, burdensome discovery." *Cf. United States v. Ohio*, No. 2:08-CV-00475, 2014 WL 1308718, at *7 (S.D. Ohio Mar. 28, 2014) (granting leave to supplement to avoid "the sort of piecemeal litigation and needless waste of judicial resources that Rule 15 was designed to avoid."). In that case, "delay alone, regardless of its length is not enough to bar [supplementation] if the other party is not prejudiced." *See Moore*, 790 F.2d 560 (internal quotations and citations omitted).

Additionally, the supplementation only adds additional facts to existing claims. *See* [R. 55, p. 4]. As with amendments, courts find little prejudice when the supplementation relates to the original complaint. *See, e.g.*, *McHenry*, 269 F.2d at 25 (noting that, despite new evidence of damage, "the factual situation set up remains substantially the same," and "a full hearing and decision on the merits can do injustice to neither party."). The Supreme Court has said that supplementations alleging "continued, persistent efforts" of the original harm such that they are "part of the same old cause of action arising out of [the original controversy]" may be permitted. *See Griffin v. Cnty. Sch. Bd. of Prince Edward Cnty.*, 377 U.S. 218, 226–27 (1964). Finally, courts favor supplementation and amendment in favor of judicial efficiency and avoiding piecemeal litigation. *See Troxel Mfg. Co.*, 489 F.2d at 970 (discussing "the hornbook proposition that piecemeal litigation should be discouraged").

Like the case in *Griffin*, McIlwain purports to supplement his complaint with events evincing a "continued, persistent effort" to harm him through false statements. *See* 377 U.S. at 226; [R. 55, p. 8]; *see also Ne. Ohio Coal. for the Homeless v. Husted*, No. 2:06-CV-00896, 2015 WL 13034990, at *9 (S.D. Ohio Aug. 7, 2015) (first citing *Griffin*, 377 U.S. at 226, then citing *Poindexter v. La. Fin. Assist. Comm'n*, 296 F. Supp 686, 688 (E.D. La. 1968)) (granting Plaintiff

leave to file a supplemental complaint when defendant's successive "schemes" were different but "born of the same effort" to harm (cleaned up)); *Bromley v. Mich. Educ. Ass'n-NEA*, 178 F.R.D. 148, 154 (E.D. Mich. 1998) (citation omitted) ("the defendant is generally expected to defend against all claims arising out of that course of conduct—whether accruing before or after the original pleading was filed."). The Court finds that judicial economy favors resolution of these additional disputes in the instant matter, rather than in an additional case—which, the Court notes, would lead to more costly briefing, which Berry understandably seeks to avoid. *See, e.g.*, [R. 56, pp. 3–4]. Finally, there is no evidence of prejudice to Berry at this early stage, especially given the clear relationship to the earlier allegations and Berry's own admission of the similarity of allegations. *See id*. at 2 ("Plaintiff proposes to supplement his complaint with allegations that the defamation he claims is a little worse than originally pled."). Thus, the Court finds there was no prejudicial delay to Berry.

### 2.     Dilatory Motive or Bad Faith

Even in the absence of prejudicial delay, "[l]eave to amend may be denied if it is brought in bad faith or for dilatory purposes." *Consol. Rail Corp*, 2012 WL 12995491, at *5. Amendments and supplementations "should be denied if [their] purpose is to use delay to harass the party's opponent." *Id.* (citing *Nat'l Bank of Wash.*, 863 F.2d at 328). Berry asserts that the real, bad faith reason McIlwain seeks to supplement and amend his complaint is to "compel[] further briefing by Defendant on a needless motion." [R. 56, p. 3]. She moreover asserts his actions were "dilatory," *id.*, meaning they were "(1) designed or tended to cause delay . . . [or] (2) given to or characterized by tardiness," *Dilatory*, *Black's Law Dictionary* (12th ed. 2024). As previously discussed, McIlwain's *supplementation* could not have been done as a matter of course, so the fact that he had knowledge of the underlying facts but did not move for

supplementation before the deadline for *amendments* as a matter of course, [R. 56, p. 3], indicates no dilatory or bad-faith motive in and of itself.

Moreover, "[a] plaintiff is generally not dilatory in seeking to amend a complaint when no trial or pretrial dates have been scheduled and no significant activity beyond the pleading stage has occurred." *Christy v. Nationstar Mortg. LLC*, No. 18-CV-13415, 2019 WL 3753717, at *6 (E.D. Mich. Aug. 8, 2019) (citing *Boyce v. CitiMortgage, Inc.*, 992 F. Supp. 2d 709, 720 (W.D. Tex. 2014); *see also Boyce*, 992 F. Supp. 2d at 720–21 (finding plaintiff not dilatory when no scheduling order had been established and because "generally a plaintiff is not dilatory when no trial or pre-trial dates have been scheduled." (cleaned up)). Cases in which courts have found dilatory motive and bad faith delays typically involve very late-stage action, such as after discovery or a ruling on the merits. *See, e.g.*, *United States ex. rel Angelo v. AllState Ins. Co.*, 106 F.4th 441, 454 (6th Cir. 2024) (holding the district court did not abuse its discretion in denying plaintiff leave to amend after a motion to dismiss was granted for the defendant); *Prater v. Ohio Educ. Ass'n*, 505 F.3d 437, 445 (6th Cir. 2007) (affirming district court's denial of leave to amend in "late stage of the case," nine months after the amendment deadline and after fully briefing summary judgment motions and exchanging "substantial" discovery).

McIlwain and Berry's case is still in early stages—there have been no summary judgment motions, no rulings on Rule 12 motions, and no scheduling order for discovery. While McIlwain may have avoided causing Berry to additionally brief his amendment adding a breach of contract claim had he filed it a day earlier, this is unlike cases wherein courts have found bad faith or dilatory motive after discovery or dispositive motions. *Cf. Christy*, 2019 WL 3753717 ("Plaintiff's motion is dilatory because they did not file it until after the close of discovery and less than two weeks before the dispositive motion cutoff date."). Moreover, the arguments Berry

raised against the breach of contract claim mirror those already made in her motion to dismiss regarding the related claims. *Compare* [R. 56, p. 4 (arguing the statute of frauds makes the amended claim futile)], *with* [R. 27, pp. 7 ("Plaintiff's promissory estoppel and unjust enrichment claims are barred by the statute of frauds") (cleaned up)]. At this point, there is simply not enough evidence of bad faith or dilatory motive, especially given the general "liberal construction" of amendments and desire to see cases decided on their merits. *See McHenry*, 269 F.2d at 25. For these reasons, the Court will not deny McIlwain's motion on the grounds of bad faith or dilatory motive.

### B. Futility of Amendment

Berry argues that McIlwain's new breach of contract claim and amendments to the underlying contract-based claims—breach of the covenant of good faith and fair dealing, promissory estoppel, and unjust enrichment, [R. 55-1]—would be "futile." [R. 56, p. 4]. Futility of amendment is evaluated under the same standard as a Rule 12(b)(6) motion to dismiss for failure to state a claim. *See 500 Assocs., Inc*, 496 F. App'x at 593 (citing *Riverview Health Inst. LLC*, 601 F.3d at 512). Her futility argument centers on the statute of frauds, which bars enforcement of oral contracts for greater than one year. *See* [R. 56, p. 4]; Ky. Rev. Stat. § 371.010(7). Berry asserts that the alleged agreement posited by McIlwain would, by his own allegations, have taken over a year to complete performance. [R. 58, p. 3].

Notably, Berry did not argue that the supplementation of the defamation and IIED claims would be futile other than summarily stating "the supplementation would be as deficient as prior allegations." [R. 56, p. 3]. Berry clearly anticipates raising arguments as to the merits of these claims in a forthcoming motion, given her statement that she "looks forward to renewing the motion to dismiss." [R. 58, p. 4]. She moreover largely relies on her previously filed—and

denied (without prejudice)—Motion to Dismiss, arguing that, while "[a] lenient standard [for] supplementing and amending might be available procedurally, but here it would be cumulative to an original complaint that is factually lacking or susceptible to the arguments in Defendant's motion to dismiss." [R. 56, p. 1].

Although courts *may* deny a motion to amend or supplement on futility grounds, "many courts, for reasons of practicality, decline to engage in futility analysis at the motion to amend phase and opt instead to assess questions of plausibility later when ruling on the motion to dismiss." *Restocon Corp. v. Metro. Knoxville Airport Auth.*, No. 3:23-CV-142, 2023 WL 6614416, at *2 (E.D. Tenn. Aug. 25, 2023); *see also Bucciarelli v. Nationwide Mut. Ins. Co.*, 662 F. Supp. 2d 809, 814 (E.D. Mich. 2009) ("This Court does not read [Sixth Circuit case law] as requiring the Court to determine futility before it grants a motion to amend the complaint, but rather as stating that futility is a permissible basis for denying a motion to amend."). Although courts frequently opt to postpone ruling on the merits of a futility argument when faced with a currently ripe motion to dismiss, the Court finds it appropriate to adopt this approach given the previously filed—and obviously forthcoming—motion to dismiss by Berry. *Cf. Restcon Corp.*, 2023 WL 6614416, at *2–3 (declining to rule on futility of amendment and denying the defendant's first motion to dismiss as moot after granting motion to amend).

In *Cleveland Communications*, the court granted the plaintiff's motion to amend and denied the defendant's motion to dismiss as moot because it was based on the initial complaint. *Cleveland Commc'ns, Inc. v. Lorain Cnty. Bd. of Comm'rs*, No. 1:23-CV-1561, 2024 WL 3878308, at *3 (N.D. Ohio Aug. 20, 2024). Despite the difference in posture, the Court finds the case instructive. The court in *Cleveland Communications*, as here, faced a situation in which "[t]he parties' arguments for and against dismissal of the claims in the first amended complaint

[were] crisscrossed and interspersed throughout the parties' opposition and reply briefs addressing Defendants' motion to dismiss, Plaintiff's Motion to Amend, and Plaintiff's Supplement. *Id.* This Court will adopt their approach and find that "whether the proposed amendments are futile and whether Plaintiff's claims are subject to dismissal under Rule 12(b)(6) would be best handled in a single motion to dismiss, where the arguments are cleanly and plainly presented before the Court." *Id.* Therefore, the Court anticipates Berry will re-file her motion to dismiss, updated as necessary to address the new allegations in the supplemented complaint.

This decision is further supported by the fact that the briefing on the statute of frauds issue is fairly underdeveloped, in addition to relying heavily on arguments made in prior briefing for Berry's Motion to Dismiss. *See, e.g.*, [R. 56, p. 4 (devoting a single paragraph to the issue)]. Moreover, the briefing that is provided leaves the Court with lingering questions about the exact parameters of the parties' legal arguments. For instance, McIlwain argues that he performed his portion of the contract—the down payment and renovation expenses—within one year, but also argues that he should have received rental income for the past several years. *See* [R. 57, pp. 3–5]; *see also* [R. 58, p. 3 ("[A]ny notion that the agreement, presumably reached prior to April 5, 2018, was contemplated by the parties as to be completed within a year is undermined by Plaintiff's own allegations of fact—the rental proceeds would have been paid for a period occurring more than one year.")]. Further briefing should clarify his allegations concerning the parameters of the agreement McIlwain is seeking to enforce, including its anticipated end date and whether it included ongoing rental payments. Moreover, the Court would ask McIllwain to explain whether he is attempting to argue the agreement could have been performed within a year or simply that *he* performed entirely within the year. *See Game Sci., Inc. v. Gamestation, Inc.*, No. 4:14CV-00044, 2014 WL 12726643, at *18 (W.D. Ky. Oct. 21, 2014), *report and*

*recommendation adopted*, 2014 WL 12726642 (W.D. Ky. Nov. 13, 2014) (citing *East Tenn. Tel. Co. v. Paris Elec. Co.*, 162 S.W. 530, 533 (Ky. Ct. App. 1914) ("Kentucky law does provide an exception to the statute of frauds where one party to the agreement has provided full performance within one year of formation."). Finally, given the parties' arguments about the statute of limitations, reasonable discovery rule, and choice of law, McIlwain's response should specify when he discovered Berry's alleged statements to Temple University, which is currently missing from the record. *See* [R. 56, p. 3 n.1]; [R. 57, pp. 6–7]; [R. 58, pp. 3–4].

Therefore, the Court will not deny McIlwain's motion on futility grounds.

## IV.   CONCLUSION

Although a court may deny a motion to amend or supplement when there is evidence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment, etc.," on the current record, there is no such reason to deny McIlwain's Motion for Leave to File a Supplemental Complaint. *See Morse*, 290 F.3d at 800 (quoting *Foman*, 371 U.S. at 182). The Court additionally finds the "liberal" standards for amendment and significant preference to decide cases on their merits and avoid piecemeal litigation weigh in favor of granting McIlwain's motion. *See McHenry*, 269 F.2d at 25; *Troxel Mfg. Co.*, 489 F.2d at 970. At this time, however, McIlwain has been given ample time and opportunity to clarify his complaint, and the Court notes that any further amendments or supplementations will not be met favorably.

- 19 -

Accordingly, **IT IS HEREBY ORDERED** as follows:

1. Plaintiff McIlwain's Motion for Leave to File a Supplemental Complaint, [**R. 55**], is **GRANTED.** The Clerk is **DIRECTED** to docket the Plaintiffs' tendered First Amended Complaint, [**R. 55-1**], as the First Amended Complaint in this action.

2. Should Berry choose to refile her motion to dismiss, she must do so by **December 6, 2024**.

3. If Berry elects to file a renewed motion, McIlwain's response will be due **within twenty-one (21) days** of the filing of the renewed motion.

4. **Within fourteen (14) days** of the filing of McIlwain's response, Berry **MAY** file a reply in further support of her position.

5. This briefing schedule can **ONLY** be modified by the Court, not by party consent.

This the 7th day of November 2024.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF KENTUCKY

cc: Counsel of Record
    Plaintiff, *pro se*