UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| TIMOTHY J. MCILWAIN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:23-CV-130-CHB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| BROOKE BERRY, *et al.*, | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on Defendant Brooke Berry's Motion to Dismiss and Incorporated Supporting Memorandum ("Motion to Dismiss"), [R. 68]. Plaintiff Timothy J. McIlwain responded, [R. 73], and Defendant replied, [R. 74]. The motion is thus ripe and ready for review. For the following reasons, Defendant's motion will be granted in part and denied in part.

I.      **BACKGROUND**

A.      **Procedural Background**

As the Court has previously explained, the record in this case is "long and contentious." *See, e.g.*, [R. 51]; [R. 61]. Therefore, the Court will only outline the necessary procedural history for the instant motion.[1] Plaintiff filed his initial complaint on March 16, 2023. [R. 1]. The Court permitted him to file the First Amended Complaint ("FAC"), including supplemental allegations that postdate the initial Complaint, on November 8, 2024. *See* [R. 61 (granting leave to amend and supplement)]; [R. 62 (FAC)]. Defendant then filed the instant Motion to Dismiss, [R. 68]. That motion is fully briefed, [R. 73]; [R. 74].

---

[1] For a more in-depth explanation of the "long and contentious history" of this case, *see* [R. 51]; [R. 61].

### B.    Factual Allegations

The following factual allegations are drawn from the FAC. [R. 62]. This section provides a general overview of the most relevant factual allegations, while the specific allegations relating to each claim will be addressed in the relevant section.

According to the FAC, Plaintiff and Defendant began a romantic relationship in 2009. *See id.* § III ¶ 1. In 2016, the couple had a daughter ("Child"). *See id.* ¶ 2. Sometime in 2017, after the birth of their daughter, Defendant proposed marriage to Plaintiff, who declined. *See id.* ¶¶ 6–7. Plaintiff claims that, after he refused to marry her, Defendant devised a scheme to prevent him from participating in their child's life. *See, e.g., id.* ¶ 9.

Part of that scheme, according to the FAC, was for the parties to move to Louisville from New York/New Jersey to enter into a real estate venture together. *See id.* ¶ 9(A)–(H). The venture involved purchasing a home together, with Defendant living in the home while renovating it to create separate residences that would ultimately generate rental income. *Id.* ¶ 9(D). Plaintiff alleges that he put money toward the equity and closing costs for the purchase of the home and that he paid for renovations. *See id.* ¶ 9(E)–(G).

Plaintiff alleges that shortly after moving to Louisville, Defendant "embarked upon a persistent campaign of provable lies about [Plaintiff] with a constant flood of filings in Family Court to block [Child] from having access [to] her father." *Id.* ¶ 9(I)–(J). For example, per the allegations in the FAC, Defendant "reported to schools, doctors, government agencies, bar associations, Courts, Police, Sheriffs [ ] accusing [Plaintiff] of everything from drug use to family violence, to molestation of his daughter and a relative," *see id.* ¶ (9)(R), in an effort to gain sole custody of their daughter. *See id.* ¶ 9(K)–(L). Around that same time, Defendant "influenced" Child to stop calling Plaintiff "Daddy" and legally changed Child's last name, "to remove

- 2 -

'McIlwain'" from her name. *Id.* ¶ 9(S)–(T), (X). It is also alleged that Defendant made false statements to Plaintiff's employer, Temple University, which "caused [him] to not be asked back . . . after teaching there in 2019." *See id.* ¶ 50.

Between November 7, 2020, and January 17, 2021, Plaintiff had unsupervised visits with his daughter, but he alleges that during this entire period, Defendant "constantly filed false motions" and "created videos of her daughter in the nude for the purpose of accusing Tim of molesting [Child]." *See id.* ¶¶ 42–45. Plaintiff alleges that Defendant "continued to bring false charges" against him in March 2021, July 2021, July 2022, and January 2023. *See id.* ¶ 48.

The parties' custody dispute and related matters were heard in state court, and the FAC largely rehashes those matters and reflects how those proceedings became increasingly antagonistic. *See generally id.* ¶¶ 10–53. As the FAC explains, the proceedings also involved the issuance of several domestic violence orders ("DVOs") against Plaintiff. *See id.* ¶¶ 11–12; [R. 68–1]. First, in May 2019, a court granted Defendant a DVO against Plaintiff for "stalking." [R. 62, § III ¶¶ 11–12]; [R. 11-4, pp. 5–8]. The FAC also explains that, as a result of Defendant's allegations of Plaintiff abusing Child, the Jefferson Circuit Court, Family Division ("the Family Court"), "block[ed] [Plaintiff] from his daughter without a hearing for over three years." [R. 62, § III, ¶ 20(b)]. The Court notes that subsequent to Plaintiff moving to amend his original Complaint, the Family Court, Division Five, held a hearing on the child abuse allegations and entered a DVO against Plaintiff on behalf of Child. *See* [R. 68-1]. In an order dated November 13, 2024, Family Court Judge Jessica Stone entered an order granting a DVO on behalf of Child based on its finding "by a preponderance of the evidence that [Plaintiff] committed an act of sexual abuse against [Child]." [R. 68-1, p. 10]; *see also infra* § II (explaining that the Court can consider orders

from other courts when evaluating a motion to dismiss); *infra* § III.A.1. (finding the Family Court Order entitled to preclusive effect).

The FAC also alleges that Defendant's "latest" ethics complaint was dismissed as meritless by the New Jersey Office of Attorney Ethics ("OAE"). [R. 62, ¶¶ 54–55]; *see also* [R. 15 (Plaintiff's Response to Defendant's First Motion to Dismiss which extensively discusses the various prior ethics and state-bar proceedings)]. Although both parties addressed the ethics investigations in briefing Defendant's first Motion to Dismiss—which was denied without prejudice pending the Court's determination on subject-matter jurisdiction, *see* [R. 11]; [R. 15]; [R. 19])—Plaintiff's FAC, tendered July 17, 2024, as an attachment to his Motion for Leave to File Supplemental Complaint, [R. 55], fails to acknowledge that, at the time of filing the FAC, both New Jersey and New York had issued disciplinary suspensions based on his conduct in the custody dispute. *See In Re McIlwain*, Docket No. 087971 (N.J. July 13, 2023) (New Jersey Suspension); *Matter of McIlwain*, 229 A.D.3d 15 (N.Y. 2024) (reciprocal suspension in New York, decided May 23, 2024).[2]

---

[2] These suspensions were based on the finding that Plaintiff violated his ethical obligations as a member of New Jersey and New York state bars. *See In Re McIlwain*, Docket No. 087971, at *1; *Matter of McIlwain*, 229 A.D.3d at 19; *see also* [R. 11, p. 2 (discussing, in Defendant's first Motion to Dismiss, the suspension)]; [R. 11-1 (Decision of the Supreme Court of New Jersey Disciplinary Review Board on March 6, 2023 ("DRB Decision"))]; [R. 15, pp. 7–12 (discussing the New Jersey suspension)]; *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999), *abrogated on other grounds by Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002) (explaining that a court can consider "public records" and "matters of which a court may take judicial notice" on a motion to dismiss). The fifty-eight-page DRB Decision, filed into the record by Defendant in her initial Motion to Dismiss, [R. 11-1], further details Plaintiff's conduct in the custody dispute, *see id.*, which resulted in the Supreme Court of New Jersey affirming the finding that Plaintiff violated the following Rules of Professional Conduct ("RPC"): "RPC 3.1 (engaging in frivolous litigation), RPC 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and RPC 8.4(d) (engaging in conduct prejudicial to the administration of justice)." *See In Re McIlwain*, Docket No. 087971, at *1; *Matter of McIlwain*, 229 A.D.3d at 19 ("[McIlwain's] misconduct in New Jersey also constitutes misconduct in violation of New York Rules of Professional Conduct (22 NYCRR 1200.0) rules 3.1 (a) and 8.4 (c) and (d).").

The Court has not considered the DRB Decision in deciding the merits of instant Motion nor afforded it any preclusive effect, but the Court notes that it calls into question the veracity of many allegations in the FAC. Plaintiff is reminded that, even proceeding *pro se*, he has a duty of candor to the Court. *See generally Muhammad v. Gap Inc*., No. 2:24-CV-3676, 2025 WL 1836657, at *8 (S.D. Ohio July 3, 2025) ("Nor does [Plaintiff's] *pro se* status relieve him of his obligations of candor and truthfulness to the Court." (citing *Kendrick v. Sec'y, Fla. Dep't of Corr.*, No. 21-12686,

Plaintiff filed the initial Complaint March 16, 2023, naming Defendant and John Does 1–5 as defendants. *See* [R. 1].[3] Plaintiff is an attorney licensed in other jurisdictions and is proceeding *pro se* in this matter. *See* [R. 62, § III ¶ 1]. Plaintiff alleges the following causes of action: defamation (Count 1), *id.* § IV; intentional infliction of emotional distress ("IIED") (Count 2), *id.* § V; punitive damages (Count 3), *id.* § VI; breach of contract (Count 4), *id.* § VII; breach of the covenant of good faith and fair dealings (Count 5), *id.* § VIII; promissory estoppel (Count 6), *id.* § IX; and unjust enrichment (Count 7), *id.* § X. As to relief, Plaintiff seeks compensatory and punitive damages. *Id.* § XI.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move for dismissal for "failure to state a claim upon which relief may be granted." To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is "plausible on its face" if the factual allegations in the complaint "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line

---

2022 WL 2388425, at *3 (11th Cir. July 1, 2022))); *Kendrick,* 2022 WL 2388425, at *3 ("[*Pro se* litigants] also owe the same duty of candor to the court as imposed on any other litigant.").

[3] To date, the John Doe Defendants have not been identified or served in this action. Moreover, the First Amended Complaint contains no allegations against them—they are mentioned only in the caption of the First Amendment Complaint. *See* [R. 62]. In fact, the First Amended Complaint states that it is "against Defendant Brooke Leah Berry." *Id.* at 1.

between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

Determining if a complaint sufficiently alleges a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). Further, "[t]he complaint is viewed in the light most favorable to [Plaintiff], the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in [Plaintiff's] favor." *Gavitt v. Born*, 835 F.3d 623, 639–40 (6th Cir. 2016) (citing *Jelovsek v. Bredesen*, 545 F.3d 431, 434 (6th Cir. 2008)).

Moreover, "[g]enerally, *pro se* pleadings are to be 'liberally construed' and 'held to less stringent standards than formal pleadings drafted by lawyers.'" *Thomas v. BrandAuto Fin.*, No. 1:18-CV-252, 2019 WL 1769152, at *4 (E.D. Tenn. Apr. 22, 2019) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).[4] "Nevertheless, liberal treatment of *pro se* pleadings does not require lenient treatment of substantive law . . . even a *pro se* plaintiff must state and support all elements of a substantive claim to avoid an adverse judgment." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). Also, although Plaintiff has paid the filing fee, the Court may still "*sua sponte* dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Stigall v. Univ. of Ky. Hosp.*, No.

---

[4] The Court "finds it doubtful that [Plaintiff], who is a licensed attorney . . . is entitled to this liberal construction." *Cf. Thomas*, 2019 WL 1769152, at *4 (citation omitted); *see also Sevier v. Apple, Inc.*, No. 3:13-0607, 2015 WL 4873122, at *9 (M.D. Tenn. Aug. 13, 2015), *aff'd*, No. 16-6250 (6th Cir. Sept. 6, 2016)) (same) (collecting cases). Nonetheless, as will be demonstrated in its Analysis, *see supra* § III, the Court has applied the rules of liberal construction to Plaintiff's FAC.

CIV.A.5:09CV00224KSF, 2009 WL 3739385, at *3 (E.D. Ky. Nov. 6, 2009) ("[*Apple*] authorizes a district court to conduct a limited screening procedure and to dismiss, *sua sponte*, a fee-paid complaint filed by a non-prisoner if it appears the allegations are 'totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion.'" (quoting *Apple*, 183 F.3d at 479)).

"[A]s a general rule, matters outside the pleadings may not be considered in ruling on a 12(b)(6) motion to dismiss unless the motion is converted to one for summary judgment under Fed. R. Civ. P. 56." *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999), *abrogated on other grounds by Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002) (internal quotations omitted); *see also Zakora v. Chrisman*, 44 F.4th 452, 464 (6th Cir. 2022) (stating the same). The only exceptions to this general rule are documents "attached to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and central to the plaintiff's claim," "public records, matters of which a court may take judicial notice, and letters of decisions of government agencies." *Jackson*, 194 F. 3d at 745; *see also Buck v. Thomas M. Cooley L. Sch.*, 597 F.3d 812, 816 (6th Cir. 2010) (affirming the district court's grant of a motion to dismiss on res judicata grounds and stating that "a court may take judicial notice of other court proceedings without converting the motion into one for summary judgment").[5]

## III.    ANALYSIS

Defendant has moved to dismiss each of Plaintiff's claims against her. *See* [R. 68]. Plaintiff has alleged the following claims: defamation (Count 1); IIED (Count 2) (collectively "the tort

---

[5] Notably, this is not the first lawsuit Plaintiff has filed based on similar allegations. *See McIlwain v. Dodd*, No. 22-5219, 2022 WL 17169006, at *1 (6th Cir. Nov. 22, 2022) (affirming district court's dismissal of McIlwain's claims against Berry's attorneys in state custody proceedings for failure to state a claim); *see generally Harrington v. Vandalia-Butler Bd. of Ed.*, 649 F.2d 434, 441 (6th Cir. 1981) ("[I]t is clear that a court may take judicial notice of its own record of another case between the same parties").[5]

claims"); breach of contract (Count 4); breach of the covenant of good faith and fair dealings (Count 5); promissory estoppel (Count 6); unjust enrichment (Count 7) (collectively "the real estate claims"); and punitive damages (Count 3). *See* [R. 62]. For the following reasons, Defendant's Motion will be granted as to the tort claims and punitive damages (Counts 1–3) because Plaintiff has failed in numerous ways to state a claim, but the Motion will be denied as to the real estate claims (Counts 4–7). The Court will first briefly address its own jurisdiction and the applicable law.

The FAC asserts that the Court has subject-matter jurisdiction on the basis of diversity of citizenship under 28 U.S.C. § 1332 because Plaintiff is a resident of New Jersey and Defendant is a resident of Kentucky. [R. 62, § II ¶¶ 1, 4–5]. Despite the "domestic overtones" of Plaintiff's claims, the Court has, after extensive briefing by the parties, determined that "the domestic relations exception [to diversity jurisdiction] is inapplicable to the facts of this case" and "assured itself that subject-matter jurisdiction is present." *See* [R. 25, pp. 1–2]; *see also* [R. 19]; [R. 22]; [R. 23].

Plaintiff's FAC does not specify under which state's laws he brings his claims. *See* [R. 62]. In her Motion to Dismiss, Defendant applies Kentucky law. *See* [R. 68]. In his Response, Defendant also applies Kentucky law. *See* [R. 73]. From this, the Court understands that Plaintiff brings his claims under Kentucky law. Nevertheless, Plaintiff encourages the Court to apply New Jersey law to the statute of frauds issue, explained in more detail below, noting only that it is "[a]rguable from a conflict of law basis and considering the parties were also renting properties in New Jersey and New York." *Id.* at 12. He does not expand on this conflict-of-law issue and instead argues that the Court could look to New Jersey law for guidance because Kentucky courts have not decided the precise statute of frauds issue at play. *See id.* at 12–13. The Court therefore

understands that Plaintiff does *not* argue that New Jersey law applies to his state law claims but instead argues only that the Court may consider certain New Jersey case law as persuasive authority on that particular statute of frauds issue. To the extent he attempts to argue that New Jersey law applies to this case, that argument is wholly undeveloped, and the Court need not consider it further.

Because both parties apply Kentucky law, and the Court can discern no firm basis to do otherwise, the Court will apply the substantive law of Kentucky, the forum state. *See, e.g.*, *Zetter v. Griffith Aviation, Inc.*, No. CIV.A. 603-218-DCR, 2006 WL 1117678, at *8 (E.D. Ky. Apr. 25, 2006) (noting that "[g]enerally, federal courts are to apply the law of the forum state in diversity actions"; "Kentucky courts have determined that Kentucky law should be applied whenever there are enough contacts to justify applying Kentucky law"; and "Kentucky's conflict of law rules favor the application of its own law whenever it can be justified" (internal citations and quotations omitted)); *Evans v. Armenta*, No. CV 14-329-GFVT, 2016 WL 7971244, at *4 n.4 (E.D. Ky. May 20, 2016) (explaining that Kentucky courts strongly favor applying Kentucky law whenever possible).

### A.    Tort Claims

The Court will first address Plaintiff's tort claims, defamation and IIED. *See* [R. 62, §§ IV, V]. Before addressing the individual claims, the Court will address the parties' preclusion arguments.

### 1.    Preclusion

Defendant argues that, because the Family Court has found that Plaintiff sexually abused their daughter, the doctrine of res judicata bars him relitigating the truth of those allegations. *See*

[R. 68, pp. 3–4]; [R. 68-1 (Family Court Order)].[6] Because this issue impacts both of Plaintiff's

tort claims, *see infra* §§ III.A.2–3, the Court finds it prudent to address this issue first.

Defendant asserts her argument is based on "res judicata," which, she argues, precludes

Plaintiff from asserting that she *falsely* accused him of molesting Child. *See* [R. 68, pp. 3–5]. The

Court, however, notes that the parties appear to be discussing the related-yet-distinct doctrine of

collateral estoppel, or issue preclusion, rather than res judicata, or claim preclusion. *See*

*Brandenburg Tel. Co. v. Sprint Commc'ns Co., L.P.*, 658 F. Supp. 3d 427, 452 (W.D. Ky. 2023)

(distinguishing the doctrines).

> As the Supreme Court of Kentucky has explained, the terms "res judicata" and
> "collateral estoppel" are "sometimes used interchangeably" but are "technically
> different doctrines." Res judicata, or claim preclusion, "prohibits the relitigation of
> claims that were litigated or could have been litigated between the same parties in
> a prior action." On the other hand, collateral estoppel, or issue preclusion, "allows
> the use of an earlier judgment . . . to preclude relitigation of matters litigated in the
> earlier action."

*Id.* (quoting *Miller v. Admin. Off. of the Cts.*, 361 S.W.3d 867, 871 (Ky. 2011)). Defendant does

not argue that the *claims* of defamation and IIED were addressed in the Family Court action.

Therefore, the Court understands Defendant to argue that collateral estoppel (*issue* preclusion),

rather than res judicata (*claim* preclusion), applies to the Family Court's finding that Plaintiff

abused their daughter, and will thus evaluate her arguments using the framework for issue

preclusion.

---

[6] This opinion was discussed by both parties in briefing the Motion to Dismiss, *see generally* [R. 68]; [R. 73]; [R. 74].
Plaintiff has not objected to the Court's ability to consider it at this stage in the litigation, and has, in fact, supplemented
the record with additional filings relating to the Family Court Order. *See, e.g.*, [R. 73]; [R. 73-2]; *see also Buck*, 597
F.3d at 816 ("[A] court may take judicial notice of other court proceedings without converting the motion into one for
summary judgment.").

The Court also notes that, according to the representations of the parties that the Family Court matter is under seal,
*see* [R. 75]; [R. 77], the Court has sealed [R. 68-1]. *See* [R. 78].

The preclusive effect of a judgment is dependent on the preclusion law of the jurisdiction that rendered the judgment. *See Brandenburg*, 658 F. Supp. 3d at 452 (citing *In re Bursack*, 65 F.3d 51, 53 (6th Cir. 1995)). In Kentucky, for collateral estoppel to apply,

> (1) at least one party to be bound in the second case must have been a party in the first case; (2) the issue in the second case must be the same as the issue in the first case; (3) the issue must have been actually litigated; (4) the issue was actually decided in that action; and (5) the decision on the issue in the prior action must have been necessary to the court's judgment and adverse to the party to be bound.

*Id.* (internal quotation marks omitted) (quoting *Miller*, 361 S.W.3d at 871). The first element is easily satisfied—both Plaintiff and Defendant were parties to the Family Court action—and neither party disputes this element. *See generally* [R. 68-1].

As to the second element—identity of issues—Plaintiff argues that "the issues in the two actions [are] different," because "defamation was not decided in family court." [R. 73, pp. 7–8]. However, the causes of action need not be identical for issue preclusion to apply. *See Specialty Auto Parts USA, Inc. v. Holley Performance Prods., Inc.*, 726 F. Supp. 3d 735, 741 (W.D. Ky. 2024) (applying Kentucky preclusion law and noting that "issue preclusion generally precludes relitigation of issues of fact or law actually litigated and decided in a prior action between the same parties and necessary to the judgment, *even if decided as part of a different claim or cause of action*" (emphasis added) (citation modified)); *Middleton v. PNC Bank N.A.*, No. 2017-CA-001673-MR, 2019 WL 1224621, at *6 (Ky. Ct. App. Mar. 15, 2019) ("Under the doctrine of collateral estoppel, a judgment precludes relitigation of issues actually litigated and determined in the prior suit, regardless of whether it was based on the same cause of action as the second suit." (citation modified)). The Family Court, in granting a DVO on behalf of Child, explicitly found, "by a preponderance of the evidence[,] that [McIlwain] committed an act of sexual abuse against [Child]." [R. 68-1, p. 10]. That is precisely the issue Defendant wants to seek Plaintiff from

- 11 -

relitigating. Therefore, the Court finds that Defendant has established an identity of issues. *See Brandenburg*, 658 F. Supp. 3d at 452 (quoting *Miller*, 361 S.W.3d at 871).

The third element requires that the issue have been actually litigated, meaning "it was 'properly raised, by the pleadings or otherwise, and [was] submitted for determination.'" *Id.* at 454 (quoting Restatement (Second) of Judgments § 27 cmt. d.). It is clear from the Family Court Order—describing a two-day hearing with testimony from a social worker, Defendant, Child's psychoanalyst, Child's Guardian Ad Litem, Plaintiff's witness on children's memory and suggestibility, and Plaintiff himself—that the issue was actually litigated. *See* [R. 68-1].

The fourth prerequisite for issue preclusion is that the issue was "actually decided." *Brandenburg*, 658 F. Supp. 3d at 452 (quoting *Miller*, 361 S.W.3d at 871). Plaintiff argues that, because the Family Court's decision is on appeal, the action has not been "fully adjudicated." [R. 73, p. 7]. Defendant argues, however, that issue preclusion can apply even if the prior judgment is on appeal. [R. 74, p. 3].[7] Defendant is correct: "Kentucky follows the federal common law rule that the pendency of an appeal does not destroy the finality of the judgment for the purposes of issue preclusion." *Epps Chevrolet Co. v. Nissan N. Am., Inc.*, 99 F. Supp. 3d 692, 701–02 (E.D. Ky. 2015) (citation and internal quotation marks omitted).

Finally, for issue preclusion to apply, "the decision on the issue in the prior action must have been necessary to the court's judgment and adverse to the party to be bound." *Brandenburg*,

---

[7] Defendant also argues that Plaintiff has not appealed the Family Court Order. *See* [R. 74, pp. 2–3]. Plaintiff only *attached* to his Response a "Petition for Writ of Mandamus and/or Prohibition and Motion for Intermediate Relief" ("Petition"), [R. 73-2], which describes the Family Court order and states that he is proceeding via the Petition because "there is no adequate remedy on appeal." *Id.* at 3. However, in a subsequent filing, [R. 75-1], Plaintiff included an Order from the Kentucky Court of Appeals regarding an appeal of the Family Court Order. *Id.* Although that Order held the appeal in abeyance for thirty days based on Plaintiff's motion to vacate pending in the Family Court, *id.*, the docket now reflects that the appeal is "ready" and fully briefed. *See McIlwain v. Berry*, 2024-CA-1487 (Ky. Ct. App. June 18, 2025) (Docket text: "Ready (On Merits of Appeal) – Expedited"), available at https://appellatepublic.kycourts.net/case/750aed5a78e037924f4de53d121659319d0fffda68a9a0387761b8493b1dec4 f; *see generally Buck*, 597 F.3d at 816 ("[A] court may take judicial notice of other court proceedings without converting the motion into one for summary judgment").

658 F. Supp. 3d at 452 (internal citation marks omitted) (quoting *Miller*, 361 S.W.3d at 871). The Family Court judge explicitly concluded her ruling by stating that she found "by a preponderance of the evidence that [McIlwain] committed an act of sexual abuse against [Child]," and, "[t]herefore, after careful consideration of the testimony and evidence admitted," she granted a no-contact DVO on behalf of Child. [R. 68-1, p. 10]. The Family Court judge cited no other basis for her decision, and it was certainly adverse to Plaintiff. *See id.* Therefore, the Court finds that the issue of Plaintiff sexually abusing his daughter was necessary to the prior judgment. *See Brandenburg*, 658 F. Supp. 3d at 452.

The Court notes that Plaintiff attached to his Response a stipulation by C.H.F.S. that states it decided "to reverse the substantiated findings of child abuse or neglect." [R. 73-1, p. 10].[8] This stipulation, dated January 15, 2025, postdates the Family Court's findings. *See id.* at 11. However, this does not affect the Court's collateral estoppel determination. First, this is not a decision of "a court of competent jurisdiction." *See e.g., Cabinet for Health & Fam. Servs. ex rel. M.H. v. R.H.*, 199 S.W.3d 201, 204 (Ky. Ct. App. 2006), *as modified* (Aug. 18, 2006) (noting that issue preclusion applied only to "an existing final judgment rendered upon the merits by a court of competent jurisdiction"). Nor is it a decision of an administrative agency "acting in a judicial capacity." *See Chapman v. Farris*, No. 2002-CA-000573-MR, 2004 WL 1367117, at *3 (Ky. Ct. App. June 18, 2004) (noting "it is now well accepted" in Kentucky "that decisions of administrative agencies acting in a judicial capacity are entitled to the same preclusive effect as judgments of a court"). "An agency acts in a judicial capacity when it hears evidence, gives parties

---

[8] "As a general rule, this court may take judicial notice of documents filed in a state agency proceeding." *Bradfield v. Corr. Med. Servs.*, No. 1:07-CV-1016, 2008 WL 5685586, at *4 (W.D. Mich. July 3, 2008), *report and recommendation adopted*, No. 1:07-CV-1016, 2009 WL 514251 (W.D. Mich. Feb. 27, 2009) (collecting cases). In any case, both parties discuss this record in their filings and neither objected to the Court considering it on a motion to dismiss. *See* [R. 73]; [R. 74].

an opportunity to brief and argue their versions of the facts, and gives parties an opportunity to seek court review of these findings." *Id.* (internal quotation marks and citation omitted). There are no indicia of judicial capacity in the stipulation—in fact, it was put forth to *dismiss* the appeal of their investigative finding through an administrative hearing, which, as best the Court can discern, never took place. *See* [R. 73-1]. In any case, the stipulation makes clear that the reversals of its findings "do not constitute a finding that the allegations were false or were made maliciously by any reporting source(s)." *Id.* at 10. Therefore, even if the stipulation were to count as a final judgment, it could not have preclusive effect because the issue of Plaintiff's abuse of his daughter was neither determined nor necessary to the judgment. *See Brandenburg*, 658 F. Supp. 3d at 452.

Having determined that each element of issue preclusion under Kentucky law has been met, the Court finds that Plaintiff is collaterally estopped from relitigating the issue of his abuse of his daughter in this action. *See also Simpson v. Champion Petfoods USA, Inc*., 397 F. Supp. 3d 952, 960 (E.D. Ky. 2019) ("[I]f the allegations of the Complaint are contradicted by documents attached to or necessarily implicated by the pleadings, the latter controls over the former and a Rule 12(b)(6) dismissal may be based on the documents." (internal quotation marks and citation omitted)). In other words, based on the Family Court Order, Plaintiff has not plausibly alleged that Defendant *falsely* accused him of molesting Child, and the Court will treat it as a fact (established by a preponderance of the evidence) that Plaintiff "committed an act of sexual abuse against [Child]." *See* [R. 68-1, p. 10]. The Court will now address the specific defamation and IIED claims.

### 2.    Defamation (Count 1)

The elements of a defamation claim in Kentucky are:

(a) a false and defamatory statement concerning another;

(b) an unprivileged publication to a third party;

(c) fault amounting at least to negligence on the part of the publisher; and

(d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

*Sandmann v. N.Y. Times Co.* [hereinafter *Sandmann v. N.Y.T.*], 78 F.4th 319, 329 (6th Cir. 2023) (quoting *Toler v. Süd-Chemie, Inc.*, 458 S.W.3d 276, 282 (Ky. 2014)).

Here, Plaintiff asserts that Defendant has defamed him on several occasions. *See generally* [R. 62, § IV]. In the FAC, Plaintiff states he is incorporating paragraphs 1 through 46(A), (F), and 53 of his pleading. *Id.* § IV(A). By incorporating nearly all of his eighteen-page narrative, which largely rehashes his version of events from various matters previously determined by the Family Court, Plaintiff leaves it to the Court to discern on which alleged statements he bases his defamation claim. *See generally id.* The Court has no obligation to do this, especially given the fact that the Court granted Plaintiff the opportunity to file an amended complaint, [R. 61], and he did so, [R. 62]. *See Kafele v. Lerner, Sampson & Rothfuss, L.P.A.*, 161 F. App'x 487, 491 (6th Cir. 2005) (noting that, although courts "appl[y] a less stringent standard to the pleadings of *pro se* litigants[,] . . . [they] are not relieved of the duty to develop claims with an appropriate degree of specificity," and "[a]t the very least, trial and appellate courts should not have to guess at the nature of the claim asserted" (citation modified)). Therefore, because it "fail[s] to conform to federal pleading requirements," the Plaintiff's defamation claim is "properly dismissed" on this ground alone, and the Court could end its inquiry here. *See id.*

Even so, generously considering Plaintiff's FAC, *see* [R. 62, § IV], the Court can identify three allegedly defamatory statements containing some specificity: (1) "[o]n March 18, 2022, [Defendant] falsely stated to a third party that '[Plaintiff] was disbarred as an attorney,'" *id.* § III ¶ 46(A); (2) "[i]n November 2023, [Plaintiff] spoke directly with Louisville Detective Samantha Ernst who was told that [Plaintiff] was disbarred and was evading service," *id.* ¶ 53; and (3) "[o]n February 15, 2024, [Defendant] falsely stated to a third party that '[Plaintiff] had evaded service

of the emergency protective order summons for [three] years,'" *id.* ¶ 46(F).[9] The Court will only consider these statements when evaluating Plaintiff's defamation claim.

In his Response to Defendant's Motion to Dismiss, Plaintiff attempts to clarify the basis of his defamation claims. *See* [R. 73, p. 5]. As to the allegation that Defendant stated Plaintiff was disbarred, Plaintiff relies only on the March 18, 2022, statement in paragraph 46(A), not the allegation in paragraph 53, and also references the allegations contained in paragraph 46(F) about evading service. *See id.* Notably, Plaintiff's Response also attempts to assert a number of other grounds for his defamation claims, including the following, undated statements: (4) "[h]e has intergenerational family violence," (5) "[h]e molested his niece," and (6) "[h]e is incapacitated from drugs [and] alcohol and unable to verbalize high risk triggers." *Id.* (citing, respectively, [R. 62, § III ¶ 46(C), (B), and (E)]).[10] However, Plaintiff "cannot amend [his] complaint in a brief opposing a motion to dismiss." *Bojicic v. DeWine*, 569 F. Supp. 3d 669, 694 (N.D. Ohio 2021), *aff'd*, No. 21-4123, 2022 WL 3585636 (6th Cir. Aug. 22, 2022); *see also Faber v. Smith*, No. 17-2523, 2018 WL 6918704, at *2 (6th Cir. June 6, 2018) ("A plaintiff cannot raise new legal claims in response to a dispositive motion filed by the defendant." (citing *Desparois v. Perrysburg Exempted Vill. Sch. Dist.*, 455 F. App'x 659, 666 (6th Cir. 2012))); *Guzman v. U.S. Dep't of Homeland Sec.*, 679 F.3d 425, 429–30 (6th Cir. 2012) (affirming district court's refusal to consider a claim raised for the first time in a response brief to a motion to dismiss).

To be sure, on the face of the FAC, these statements were not alleged to be defamatory. *See* [R. 62, § IV]. These allegations are pled in subparagraphs (C), (B), and (E) of paragraph 46,

---

[9] It appears that the "third party" referenced in paragraph III(46)(A) and (F) was an employee of Child Protective Services ("CPS"). *See* [R. 62, ¶ III(46) ("[Defendant] continued to meet with CPS workers and made the following statements . . .")].

[10] Even if Plaintiff had plausibly alleged that these statements underlay his defamation claim, the claim would fail because Defendant would be entitled to the qualified privilege, and Plaintiff could not show malice. *See infra* § III.A.2.b.

respectively, but the Defamation claim only incorporates subparagraphs (A) and (F) of paragraph 46. *See id.* As mentioned, the Court granted Plaintiff's request to file the FAC. *See* [R. 61]. In evaluating the Motion for Leave to File Supplemental Complaint, the Court required Plaintiff to file a redline indicating each change from the initial Complaint, *see* [R. 51], which he did, [R. 55-4]. While his initial Complaint incorporated the entirety of what is now paragraph 46 into the defamation claim, *see generally* [R. 1, § III ¶ 43, § IV], the FAC was specifically edited to include only subparagraphs (A) and (F), *see* [R. 55-4, p. 19]; [R. 62, § IV]. The Court is therefore left with the definite conclusion that Plaintiff purposefully omitted subparagraphs (B)–(E) of paragraph 46 from his defamation claim, and he cannot now assert a claim based on the allegations contained therein.

To the extent Plaintiff's Response also indicates that he is attempting to bring a defamation claim based on alleged statements that he molested Child, *see* [R. 73, pp. 5–6], the Court is under no obligation to parse through the entirety of paragraphs 1 through 45 to identify the specific allegations. *See Kafele*, 161 F. App'x at 491. Regardless, Plaintiff could not plausibly allege falsity, as required to state a claim for defamation, because of the Family Court's affirmative finding that he sexually abused his daughter. *See supra* § III.A.1; *Toler*, 458 S.W.3d at 283 n.19 ("[T]ruth [is] an absolute defense.").[11]

---

[11] Because of the Court's findings on collateral estoppel and Plaintiff's failure to adequately allege a defamation claim based on Defendant's alleged statements that he abused Child, the Court need not reach Defendant's arguments on this claim about qualified privilege or immunity. *See generally* [R. 68, pp. 2–3]; *infra* § III.A.2.b. (discussing the qualified privilege). However, it notes the Family Court's findings would preclude Plaintiff from demonstrating that Defendant acted with actual malice in making the alleged statements as necessary to overcome qualified privilege, *see Toler*, 458 S.W.3d at 283, or that Defendant acted in bad faith and without reasonable cause when she reported Child's abuse as necessary to overcome immunity under § 620.050(1). *See Norton Hosps., Inc. v. Peyton*, 381 S.W.3d 286, 292 (Ky. 2012) ("[A] reporter (of dependency, neglect, or abuse) has immunity in either of two situations: where the reporter is acting upon reasonable cause, or where the reporter is acting in good faith under [§§] 620.030 to 620.050."); *Cf. J.S. v. Berla*, 456 S.W.3d 19, 23 (Ky. Ct. App. 2015) (finding reporter of abuse entitled to immunity on defamation claims brought by father accused of abuse because the plaintiff "ha[d] not provided sufficient evidence to prove [the defendant] was not acting in good faith or was acting with knowledge of the information's falsity" (citing *Morgan v. Bird*, 289 S.W.3d 222, 226–27 (Ky. App. 2009))); *Leamon v. Phillips*, 423 S.W.3d 759, 764 (Ky. App. 2014)

Defendant's Motion to Dismiss argues that the defamation claim should be dismissed because the statements fell outside of the statute of limitations; the statements at issue were privileged; and/or the doctrine of res judicata bars Plaintiff from arguing that the statements are not privileged (i.e., were made in bad faith or with malice) or that the statements were false. *See generally* [R. 68, pp. 2–6]. In his Response, Plaintiff generally asserts that Defendant's arguments as to the statute of limitations are incorrect, res judicata does not apply, and he has pled sufficient facts to overcome a motion to dismiss. *See generally* [R. 73, pp. 3–10].

Given the lack of clarity in the FAC and the briefing, the Court again notes that, at most, Plaintiff has only attempted to assert a defamation claim based on the following allegedly false statements purportedly made by Defendant: : (1) "[o]n March 18, 2022, [Defendant] falsely stated to a third party that '[Plaintiff] was disbarred as an attorney,'" [R. 62, § III ¶ 46(A)]; (2) "[i]n November 2023, [Plaintiff] spoke directly with Louisville Detective Samantha Ernst who was told that [Plaintiff] was disbarred and was evading service," *id.* ¶ 53; and (3) "[o]n February 15, 2024, [Defendant] falsely stated to a third party that '[Plaintiff] had evaded service of the emergency protective order summons for [three] years,'" *id.* ¶ 46(F). The Court will not consider a defamation claim based on any other alleged statements.

### a.    March 18, 2022 Statement That Plaintiff was Disbarred

The statute of limitations for defamation actions in Kentucky is one year. *See* Ky. Rev. Stat. § 413.140(1)(d); *Dorn v. Dominique*, No. 22-5620, 2023 WL 2543714, at *7 (6th Cir. Mar. 14, 2023) (noting that "§ 413.140(1)(d)'s one year-statute of limitations for libel and slander applies to defamation claims" (citations omitted)); *Romines v. Coleman*, 671 S.W.3d 269, 275, n.4

---

(affirming finding of family member's reasonable cause to report of suspected child endangerment based on the nature of the allegations and credibility of the family member's testimony); *see also* [R. 68-1, pp. 9–10 (finding Berry credible at the Family Court hearing on the abuse)].

(Ky. 2023) (explaining that Kentucky uses the "umbrella term" of "defamation" for "all claims for injury to one's reputation," including slander and libel). The one-year statute of limitations begins to run upon "'the publication of the alleged libelous matter that causes the defamation or injury.'" *Suppacheewa v. Madisonville Cmty. Coll.*, No. 408CV-00031-JHM, 2010 WL 3981224, at \*15 (W.D. Ky. Oct. 8, 2010) (quoting *Caslin v. Gen. Elec. Co.*, 608 S.W.2d 69, 70 (Ky. Ct. App. 1980)). In a defamation action, "publication is a term of art, and defamatory language is published when it is intentionally or negligently communicated to someone other than the party defamed." *Toler*, 458 S.W.3d at 282 n.8 (citation and internal quotation marks omitted). Thus, for defamation claims, the allegedly defamatory statement must be published within one year of the action's commencement.

The initial Complaint was filed on March 16, 2023, [R. 1], but the summons was not issued until March 29, 2023, [R. 8], after Plaintiff paid the filing fee. Defendant, citing relevant case law, asserts that, for the purpose of determining of the statute of limitations, this action commenced on March 29, 2023. *See* [R. 68, p. 5 (citing *Steadman v. Gentry*, 314 S.W.3d 760, 762 (Ky. App. 2010))]. In his Response, Plaintiff fails to cite any authority for his assertion that "you need to look at the date of filing not the date of the service of the summons," and describes Defendant's position as "bizarre," [R. 73, p. 3]—notwithstanding that she is correct on the law. *See* Ky. Rev. Stat. § 413.250; Ky. R. Civ. P. 3.01.

In a diversity action, state law controls when an action is commenced for purposes of the statute of limitations. *Powell v. Jacor Communs. Corporate*, 320 F.3d 599, 602 (6th Cir. 2003) (citing *Eades v. Clark Distrib. Co.*, 70 F.3d 441 (6th Cir. 1995)). In Kentucky, "[a]n action shall be deemed to commence on the date of the first summons or process issued in good faith from the court having jurisdiction of the cause of action." Ky. Rev. Stat. § 413.250; *see also* Ky. R. Civ. P.

3.01. This is true despite Federal Rule of Civil Procedure 3, which states that filing a complaint commences an action, because "[Federal] Rule 3 does not operate as a tolling statute on state law claims brought in diversity actions." *Eades*, 70 F.3d at 444 (citation omitted); *Bradford v. Bracken Cnty.*, 767 F. Supp. 2d 740, 751 (E.D. Ky. 2011) (same). Therefore, for purposes of the statute of limitations, this action commenced on March 29, 2023.[12]

While it is true that "a motion under Rule 12(b)(6) . . . is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations," "dismissal is warranted if the allegations in the complaint affirmatively show that the claim is time-barred." *Jodway v. Orlans, PC*, 759 F. App'x 374, 379 (6th Cir. 2018) (citation modified). Plaintiff relies on three specifically dated statements (occurring on March 18, 2022, in November 2023, and on February 15, 2024) to support his defamation claim. *See generally* [R. 62, § IV]. Defendant argues that all statements before March 29, 2022, are time-barred. *See* [R. 68, p. 5]. The Court therefore considers whether the FAC affirmatively shows that the defamation claim is time-barred as to these statements.

On the face of the FAC, Defendant's alleged statement to C.H.F.S. that Plaintiff "'was disbarred as an attorney,'" [R. 62, § III ¶ 46(A)], took place on March 18, 2022, *id*. § IV(A)—more than one year before the action commenced on March 29, 2023. Therefore, the Court will grant Defendant's motion to dismiss Count 1 as it relates to this statement. The other two statements specified in Count 1 allegedly took place in November 2023 and on February 15, 2024. *See id.* Both of these allegations were supplemented in the FAC, as they postdate the initial Complaint, and Defendant does not argue that these are time-barred.

---

[12] It is also not clear, even if Federal Rule 3 applied, that Defendant's action would have commenced before he paid the filing fee on March 28, 2023. *See Truitt v. Cnty. of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998) ("[I]t is proper for a district court to deem a complaint 'filed' only when [in forma pauperis] status is granted or the appropriate filing fee is paid, rather than at the time a complaint is delivered to the clerk of a court."); *see also Dann v. United States*, No. CV 6:17-32-DCR, 2017 WL 3873702, at *3 (E.D. Ky. Sept. 5, 2017), *aff'd*, No. 17-6330, 2018 WL 5905589 (6th Cir. June 18, 2018) (same).

In sum, the Court finds that Defendant's alleged statement that Plaintiff was disbarred on March 18, 2022, is time-barred and will dismiss Plaintiff's defamation claim to the extent it is based on statements before March 29, 2022.[13] In any case, this alleged statement would not support a defamation claim for the reasons articulated below. *See infra* § III.A.2.b. The Court will now consider Defendant's other arguments that the remaining allegations also fail to plausibly allege a defamation claim.

### b.    November 2023 Statement that Plaintiff was Disbarred

The Court will now address Plaintiff's allegation that Defendant defamed him because he "spoke directly with Louisville Detective Samantha Ernst[,] who was told that [he] was disbarred and evading service." [R. 62, § III ¶ 53]. "[T]o satisfy the first element of a defamation claim, the language in question must 'be both false and defamatory. A statement that is false, but not defamatory is not actionable; a statement that is true is not actionable even if defamatory.'" *Sandmann v. WP Co. LLC* [hereinafter *Sandmann v. WP*], 401 F. Supp. 3d 781, 789 (E.D. Ky. 2019) (quoting *Dermody v. Presbyterian Church U.S.A.*, 530 S.W.3d 467, 472–73 (Ky. Ct. App. 2017)). "[B]ecause the law does not presume an individual's misconduct, the falsity of defamatory statements is presumed," but "truth [is] an absolute defense." *Toler*, 458 S.W.3d at 283, 283 n.19. In Kentucky, "language is defamatory 'if it tends to (1) bring a person into public hatred, contempt or ridicule; (2) cause him to be shunned or avoided; or (3) injure him in his business or occupation.'" *Sanders v. City of Pembroke*, No. 5:19-CV-23-TBR, 2020 WL 4572360, at *13 (W.D. Ky. Aug. 7, 2020) (quoting *McCall v. Courier–Journal & Louisville Times Co.*, 623 S.W.2d 882, 884 (Ky. 1981)). A statement is defamatory per se "when there is a conclusive presumption

---

[13] As discussed, the Court declines to scour all of the supposedly incorporated paragraphs of factual allegations for potential bases for Plaintiff's defamation claim. Nonetheless, most of the other statements Plaintiff attributes to Defendant occurred before March 29, 2022, and are thus time-barred. *See, e.g.*, [R. 62, § III ¶¶ 11, 18, 20, 45 (describing statements Defendant allegedly made before March 29, 2022)].

of both malice and damage." *Toler*, 458 S.W.3d at 282 (internal citation and quotation marks omitted). Because "a communication involving false allegations of unfitness to perform a job" is an "example of [the] per se classification," *id.*, the alleged statement that Plaintiff was disbarred is defamatory per se.

First, Defendant argues that the claim fails because, although Plaintiff alleges that she defamed him based on the alleged fact that he "spoke directly with Louisville Detective Samantha Ernst[,] who was told that [he] was disbarred and evading service," [R. 62, § III ¶ 53]; *id.* § IV, the FAC "does not allege that [*Defendant*] made such a statement to Detective Ernst." [R. 68, p. 6 (emphasis added)]. The Court agrees. Implicit in a *prima facie* defamation case is that the instant defendant actually made the statement. *See Hollon v. HCA Healthcare, Inc*., No. 3:22-CV-52-KKC, 2024 WL 3461386, at *9 (E.D. Ky. July 18, 2024) (explaining that, "[t]o assert a defamation claim, [a] plaintiff must allege that [the] *defendant* made a false and defamatory statement" (emphasis added) (internal citation and quotation marks omitted)). "Although precise quotations are not required," a plaintiff must "identify[] at least the general contours of the statement," including "when [it] may have been made," or by whom. *See Tucker v. Heaton*, No. 5:14-CV-00183-TBR, 2015 WL 3935883, at *6 (W.D. Ky. June 26, 2015) (dismissing a defamation claim when the plaintiff "failed to provide any [ ] detail regarding [the defendant's] alleged statements, in either her complaint or her response to [the] [d]efendants' motion; she offer[ed] nothing of their content, when they may have been made, or to whom [the defendant] allegedly published them").

Plaintiff has not identified when the statement was made—only that he heard about it from Detective Ernst in November 2023—nor does he state who said it to Ernst. *See* [R. 62, § III ¶ 53]. In fact, Plaintiff wholly fails to respond to Defendant's argument concerning the insufficiency of the allegation in paragraph 53, *see* [R. 73], which is grounds alone for the Court to dismiss. *See,*

- 22 -

*e.g.*, *Spring House Com., LLC v. City of Richmond*, No. CV 5:21-149-KKC, 2022 WL 17406310, at *6 (E.D. Ky. Dec. 2, 2022) ("[I]n its response to the motion to dismiss, Plaintiff fails to address this argument altogether, and therefore, the Court may deem this argument as conceded." (citing *Degolia v. Kenton Cnty.*, 381 F. Supp. 3d 740, 759–60 (E.D. Ky. 2019))). The Court moreover notes again that, in Plaintiff's Response, where he attempts to clarify the grounds for his defamation claim, he fails to even list paragraph 53, which the Court takes as further evidence of abandonment. *See* [R. 73, p. 5].

Alternatively, even if the Court were to generously assume that Defendant made the statement, [R. 62, § IV], the only other time Plaintiff asserts that Defendant said he was disbarred occurred on March 18, 2022. *See id.* at § III ¶ 46(A). As the Court previously found, this statement is outside of the statute of limitations and cannot withstand a motion to dismiss. *See supra* § III.A.2.a.

Even considering the merits—stretching the plausibility of Plaintiff's allegations to assume that *Defendant* made the statement *and* she made it *after* March 29, 2022—Plaintiff's claim based on paragraph 53 is "insufficient 'to raise a right to relief above the speculative level' and will be dismissed" because he cannot demonstrate the second element of a defamation claim—an unprivileged publication. *Cf. Tucker*, 2015 WL 3935883, at *6 (quoting *Assoc. of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007)). Defendant argues that her statements were covered by the "common interest" privilege. *See* [R. 68, pp. 2–3, 6]. The "common-interest privilege," also called "qualified privilege," applies to "individuals communicating where the communication is one in which the party has an interest and it is made to another having a corresponding interest." *Toler*, 458 S.W.3d at 283 (citation and internal quotation marks omitted). If the privilege applies, the plaintiff must prove actual malice. *Id.* This

is true even where the underlying statement is defamatory per se, in which case malice is otherwise presumed. *Id.*

In cases involving the qualified privilege, "otherwise defamatory-per-se communications are allowed because the societal interest in the unrestricted flow of communication is greater than the private interest." *Id.* According to Plaintiff's allegations (again assuming that the statement was made by Defendant, is not time-barred, and is sufficiently pled), the statement was made to either a CPS worker or law enforcement officer. *See* [R. 62, § III ¶¶ 46, 53]. It is moreover clear from Plaintiff's extensive recitation of various Family Court matters in the FAC that Defendant spoke with CPS and law enforcement in the process of reporting Plaintiff's abuse of their daughter. *See generally id.* at §§ III–IV.[14] The Court finds that the qualified privilege applies in this circumstance—Defendant had an interest in protecting her daughter, and law enforcement had a "corresponding interest." *Cf. Toler*, 458 S.W.3d at 283 (citation and internal quotation marks omitted).

Because the qualified privilege applies, Plaintiff must demonstrate malice, *see id.*, which he cannot do. It is true that Plaintiff alleges that Defendant "[k]new that each of those representations were false," "knew that the publication of those false facts would be damaging to" Plaintiff, and "purposely made those false statements in order to injure the reputation of" Plaintiff in order to secure sole custody of their daughter. [R. 62, § IV(B)]. However, such conclusory allegations are not sufficient to plead malice. *Cf. Ryniewicz v. Clarivate Analytics*, 803 F. App'x

---

[14] Defendant also discusses Kentucky Revised Statute § 620.050(1), which provides that "[a]nyone acting upon reasonable cause in the making of a report or acting under [Kentucky Revised Statutes] 620.040 to 620.050 [(Kentucky's mandated reporting statutes)] in good faith shall have immunity . . . with respect to participation in any judicial proceeding resulting from such report or action." *See* [R. 68, p. 3 (citing Ky. Rev. Stat. § 620.050(1))]. It is not clear, however, that she argues § 620.050(1) applies to the alleged statements that Plaintiff was disbarred or evading service. *See* [R. 68, p. 6 (asserting only that the statements are "privileged")]. Given the undefined contours of immunity under § 620.050, the Court declines to address whether any and all statements made in the process of making a protected report qualify for immunity or only the core allegations of abuse.

858, 868 (6th Cir. 2020). In *Ryniewicz*, the Sixth Circuit addressed Michigan's equivalent of the qualified privilege and noted that the plaintiff "did not provide any support for her conclusory statement that [the defendant] made defamatory remarks about her 'with the knowledge of the falsity of the statements or in reckless disregard of their truth or falsity.'" *Id.* The Sixth Circuit affirmed the district court's granting of defendant's motion to dismiss and explained that "'pleadings that [ ] are no more than conclusions[] are not entitled to the assumption of truth,'" *id.* (quoting *Iqbal*, 556 U.S. at 679), so it "[did] not consider [the plaintiff's] conclusory statements aimed at overcoming qualified privilege." *Id.*; *see also Doe v. Univ. of Dayton*, 766 F. App'x 275, 290 (6th Cir. 2019) (evaluating whether the plaintiff plausibly pled malice to overcome Ohio's qualified privilege when "he relie[d] on a legal conclusion in his complaint, that '[the defendant] made her false and non-privileged statements negligently, with knowledge of their falsity, or with reckless disregard for their truth or falsity,'" and holding it was "'not bound to accept as true a legal conclusion couched as a factual allegation.'" (citing *Iqbal*, 556 U.S. at 678)). Plaintiff's allegations are similarly conclusory.[15] Therefore, the Court also finds Plaintiff has not stated a claim for defamation based on the alleged statement that he was disbarred because Defendant is entitled to the qualified privilege.

For the foregoing reasons, the Court will grant Defendant's Motion to Dismiss Plaintiff's Defamation claim as to the alleged statement in paragraph 53 about him being disbarred.

---

[15] In any case, although to the best the Court can discern, Plaintiff has *not* been disbarred (i.e., the statement is false), he has been *suspended* by the courts of two states. *See In Re McIlwain*, Docket No. 087971 (New Jersey Suspension dated July 13, 2023); *Matter of McIlwain*, 229 A.D.3d 15 (reciprocal suspension in New York dated May 23, 2024); *see also* [R. 11, p. 2 (discussing, in Defendant's first Motion to Dismiss, the suspension)]; [R. 11-1 (DRB Decision dated March 16, 2023)]; [R. 15, pp. 7–12 (discussing the New Jersey suspension)]; *Jackson*, 194 F. 3d at 745 (explaining that a court can consider "public records" and "matters of which a court may take judicial notice" on a motion to dismiss). Therefore, if Defendant's alleged statement took place in November of 2023 (or any time after the suspension), it would be difficult if not impossible to plausibly allege "knowledge or reckless disregard as to the falsity," *see Toler*, 458 S.W.3d at 284 (citation modified), of the statement that Plaintiff was disbarred.

### c.    Statements that Plaintiff was Evading Service

The Court will now address Plaintiff's remaining allegations that Defendant defamed him by stating he was evading service. *See* [R. 62, § III ¶¶ 46(F), 53]. As explained in the previous subsection, Plaintiff has utterly failed to respond to Defendant's argument regarding the insufficient level of detail in paragraph 53, and the Court considers any defamation claim based on that statement abandoned, *see supra* § III.A.2.b., but will address the claim as it relates to paragraph 46(F). As to the first element of defamation, falsity is presumed, *see Toler*, 458 S.W.3d at 283. As to whether the statement was defamatory, Defendant argues that stating that Plaintiff evaded service is not defamatory per se but relies on no authority in so arguing. *See* [R. 68, p. 6]. Plaintiff, however, does not dispute this, and the Court agrees that it is not defamatory per se. That is, stating that someone is evading service does not carry "a conclusive presumption of both malice and damage." *Toler*, 458 S.W.3d at 282 (citation modified); *see also Gilliam v. Pikeville United Methodist Hosp. of Ky., Inc.*, 215 S.W.3d 56, 61 (Ky. Ct. App. 2006) ("Statements classified as defamatory per se include those which attribute to someone a criminal offense, a loathsome disease, serious sexual misconduct, or conduct which is incompatible with his business, trade, profession, or office.").

The question is then whether such a statement "'tends to (1) bring [Plaintiff] into public hatred, contempt or ridicule; (2) cause him to be shunned or avoided; or (3) injure him in his business or occupation.'" *Sanders*, 2020 WL 4572360, at *13 (quoting *McCall*, 623 S.W.2d at 884). The Court finds that it does not. The Court could not locate authority in any jurisdiction holding that accusations of evading service—which is not a crime in Kentucky—are defamatory. *Cf. Vines v. Wyatt Energy Res., LLC*, No. 5:20-CV-115-DCB-MTP, 2020 WL 8922791, at *1 (S.D. Miss. June 25, 2020) (noting that evading service of process is a crime in Mississippi when the

plaintiff asserted a defamation claim based on statements that he had evaded service).[16] "'[M]easured by [its] natural and probable effect on the mind of the average lay recipient,'" Defendant's alleged statement, while perhaps not flattering to Plaintiff, does not invite the kind of public scorn as required to find a statement defamatory. *Cf. Better Built Garages, Inc. v. Ky. New Era, Inc.*, No. 2007-CA-001432-MR, 2008 WL 4531037, at *2–3 (Ky. Ct. App. Oct. 10, 2008) (quoting *McCall*, 623 S.W.2d at 884) (finding that a news report "contain[ed] some sensational language and [was] not particularly flattering to the appellants," but, "none of the statements . . . [were] so outrageous they would cause the average lay recipient to shun, avoid, hate, hold in contempt, or ridicule the appellants," and affirming the trial court's determination that the report was not defamatory). Plaintiff has therefore failed to state a claim for defamation based on Defendant's alleged statements about him evading service. Additionally, Plaintiff has not plausibly alleged special damages.

To satisfy the fourth element of a defamation claim, even assuming statements about him evading service are defamatory, Plaintiff must plausibly plead "the existence of special harm caused by the publication." *See Toler*, 458 S.W.3d at 282. This he has failed to do. As Defendant argues, Plaintiff "did not allege how he was damaged by the alleged statement[s]." [R. 68, p. 6]. Plaintiff does not address this argument in his Response, *see generally* [R. 73], so the Court considers this claim abandoned and can dismiss on this ground alone. *See Spring House*, 2022 WL 17406310, at *6. Further, a review of the FAC reveals no allegations of special damages. *See generally* [R. 62].

---

[16] The only Kentucky statutes prohibiting the evasion of service and proscribing punishment involve witnesses who evade service "to avoid being compelled to testify before any legislative committee or grand jury." Ky. Rev. Stat. §§ 421.080; 421.990. These statutory sections are inapplicable.

To demonstrate special damages, a plaintiff must demonstrate more than "mere embarrassment," "humiliation," and "mental anguish," because "special damages . . . support *actual economic loss*." *Sandmann v. WP*, 401 F. Supp. 3d at 789 n.7 (emphasis in original) (internal citation and quotation marks omitted). For example, the Kentucky Court of Appeals found that a plaintiff who "sought damages only 'for public embarrassment and humiliation [and] adverse effects on his future employment prospects and career, and . . . for the adverse effect on his future earnings and financial stability'" had failed to plead special damages. *Dermody*, 530 S.W.3d at 467. Similarly, Plaintiff has only alleged that his reputation and mental health were damaged based on Defendant's alleged statements. *See* [R. 62, § IV]. In his demand for relief, Plaintiff similarly seeks damages only to "fairly compensate him for the injuries and suffering inflicted upon him." *Id.* § XI; *cf. Dermody*, 530 S.W.3d at 467; *Rich for Rich v. Ky. Country Day, Inc.*, 793 S.W.2d 832, 837 (Ky. Ct. App. 1990) ("In this action, the plaintiff [ ] alleges only that he 'has experienced emotional distress, humiliation, and stigmatization.' He has alleged no facts which would show damages. In his prayer, he seeks general damages only. He does not allege special damages.").[17]

Accordingly, because Plaintiff has failed to plausibly establish the first and fourth elements of a defamation claim, the Court will dismiss his defamation claim to the extent it relies on alleged statements that he evaded service. Therefore, having addressed all of the alleged defamatory statements and having found that Plaintiff has failed to state a claim as to each one, the Court will grant Defendant's Motion to Dismiss Count 1.

---

[17] The Court also notes that this Court has previously found that a mother could not recover damages on a defamation claim when the "[r]emoval of [her] children from her custody would have resulted from an investigation by CPS and not based on the defendant's allegation alone." *Peterson v. Hopkins*, No. 3:10CV-98-C, 2011 WL 5122637, at *3 (W.D. Ky. Oct. 27, 2011).

### 3.    Intentional Infliction of Emotional Distress (Count 2)

Plaintiff's second claim is for IIED. [R. 62, § V]. As to Count 2, Plaintiff alleges that Defendant "has emotionally abused [him] as demonstrated by criminal acts of [ ] perjury and ongoing false statements . . . which on one occasion led to physical restraint by a false arrest leading to incarceration, [and] which were both intentional and reckless," *id.* § V(B); the "'continuous course of conduct . . . [was] outrageous and intolerable . . . [and] offends the generally accepted standards of decency and morality," *id.* § V(C); "the damage is severe as it now includes . . . the development of post-traumatic stress syndrome," *id.* § V(D); and "the emotional and mental damages [were] suffered as a direct result of [Defendant's] conduct of constant accusations of molestation and attempts to incarcerate [him]," *id.* § V(E). Again, Plaintiff states that he is incorporating the factual allegations made in paragraphs 1 through 55 but leaves the Court guessing as to which allegations in his eighteen-page narrative make up his claim for IIED. *See generally id.*; *see also Kafele*, 161 F. App'x at 491 (noting that "*pro se* litigants are not relieved of the duty to develop claims with an appropriate degree of specificity," and "[a]t the very least, trial and appellate courts should not have to guess at the nature of the claim asserted" (citation modified)). Plaintiff's conclusory allegations—which are largely a bare recitation of some of the elements of IIED—fail to state claim. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (citing *Twombly*, 550 U.S. at 555)).

Although, as previously noted, a plaintiff may not cure pleading deficits in a response to a motion to dismiss, *see, e.g.*, *Bojicic*, 569 F. Supp. 3d at 694, even if the Court looks to Plaintiff's Response for clarification as to his IIED claims, the claim fails as outlined below. In his Response, Plaintiff attempts to clarify the specific factual allegations that he claims support his IIED claim:

Defendant accused him of molesting their daughter and his niece, taught their daughter to refer to him by his first name, removed his last name from their daughter's last name, created child pornography involving their daughter, and got him fired from Temple University.[18] *See* [R. 73, pp. 4–5 (citing [R. 62])]. Construing the FAC (and the Response) liberally, the Court will only consider whether Plaintiff has stated an IIED claim based on those allegations listed in his Response.

IIED, sometimes called the tort of outrage, *Watts v. Lyon Cnty. Ambulance Serv.*, 23 F. Supp. 3d 792, 813 (W.D. Ky. 2014), is meant to "redress behavior that is truly outrageous, intolerable and which results in bringing one to his knees." *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 459 (6th Cir. 2008) (quoting *Osborne v. Payne*, 31 S.W.3d 911, 914 (Ky. 2000)). To state a claim for IIED in Kentucky,

1.  the wrongdoer's conduct must be intentional or reckless;
2.  The conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality;
3.  There must be a causal connection between the wrongdoer's conduct and the emotional distress[;] and
4.   The distress suffered must be severe.

*Id.* (citation modified) (quoting *Osborne*, 31 S.W.3d at 913–14).

Kentucky treats IIED as a "gap filler," meaning it "is not available if 'an actor's conduct amounts to the commission of one of the traditional torts such as assault, battery, or negligence for which recovery for emotional distress is allowed.'" *Estep v. Combs*, 366 F. Supp. 3d 863, 887 (E.D. Ky. 2018) (quoting *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 298–99 (Ky. Ct.

---

[18] Specifically, in the Response, Plaintiff asserts that his IIED claim is based, in part, on "Temple's stopped returning [his] emails and calls in 2022." [R. 73, p. 4]. On its face, this is not conduct by Defendant at all. However, given the liberal construction afforded to *pro se* litigants, the Court assumes this statement is meant to refer to the allegation in the First Amended Complain that Defendant "made false statements that [he] was convicted of domestic violence to Temple University, where [he] was employed as an adjunct professor . . . which caused [him] to not be asked back by Temple." [R. 62, ¶ III (50)].

App. 1993)); *see also Watts*, 23 F. Supp. 3d at 813 (explaining that "a plaintiff cannot proceed on an IIED claim where the alleged conduct makes out a claim for another tort for which emotional distress damages would be available" (citations omitted)); *Grace v. Armstrong Coal Co., Inc.*, No. 4:08-cv-109-JHM, 2009 WL 366239, at *3 (W.D. Ky. Feb. 13, 1999) ("[A]n IIED claim cannot be pled by itself, in tandem with another tort, or in the alternative as long as some other tort with adequate relief fits the facts."); *id.* at *4 (dismissing the plaintiff's IIED claim when "[t]he facts underlying [it] [were] coterminous with the facts underlying his defamation and wrongful discharge claims . . . [and] emotional distress damages are available for the torts of wrongful discharge and defamation").

An exception to this "gap filler" rule exists if the defendant solely intended to cause extreme emotional distress. *Green v. Floyd Co*, 803 F. Supp. 2d 652, 655 (E.D. Ky. 2011) (citing *Brewer v. Hillard*, 15 S.W.3d 1, 7–8 (Ky. App. 1999)). "But where the plaintiff merely alleges that emotional distress resulted from the defendants' conduct, not that their sole purpose in engaging in that conduct was to inflict that distress, the allegations fall outside this narrow exception and fail to state a viable IIED claim." *Bailey v. Aramark Corp.*, No. CV:16-343-JMH, 2017 WL 3841687, at *4 (E.D. Ky. Sept. 1, 2017) (citing *Vidal v. Lexington-Fayette Urb. Cnty. Gov't*, No. 5:13-CV-117-DCR, 2014 WL 4418113, at *9 (E.D. Ky. Sept. 8, 2014)).

Defendant first argues that the IIED claim is subsumed by the defamation claim, and the exception to the "gap filler" rule does not apply because the FAC alleges that her motivation for the alleged conduct was "to obtain custody of their daughter and separate him from his daughter," "a separate motivation that is not solely to cause emotional distress." [R. 68, p. 7 (citing [R. 62, § V])]. Relatedly, she argues that the IIED claim is time-barred because Plaintiff cannot use IIED's five-year statute of limitations to assert a claim that would otherwise be time-barred if brought

under a traditional tort like defamation. *Id.* (citing *Shaw v. Handy*, 588 S.W.3d 459, 461–462 (Ky. App. 2019)). Defendant also asserts that, to the extent Plaintiff bases his IIED claim on her allegations of his abuse of their daughter, the claim is barred by the Family Court's findings. *Id.* at 8. Finally, she argues that, in any case, Plaintiff's IIED claim fails on the merits. *Id.*

Plaintiff's Response utterly fails to address any of Defendant's legal arguments about IIED. *See* [R. 73, pp. 3–5]. Other than claiming he did not abuse his daughter, niece, or Defendant, and attempting to clarify the conduct on which he bases his claim, he wholly fails to respond to a single legal argument made by Defendant regarding the elements of IIED, the gap-filler rule, or the statute of limitations. *See generally id.* Instead, he offers only a conclusory sentence that his "IIED claim will succeed because a court could found [sic] that for a the [sic] conduct listed . . . is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and be regarded as atrocious, and utterly intolerable in a civilized society." *Id.* at 4–5 (citation omitted). This failure to respond, again, supports dismissal on the grounds that Plaintiff has abandoned this claim. *See Spring House*, 2022 WL 17406310, at *6. Even addressing each alleged basis for IIED on the merits, however, Plaintiff fails to state a claim.

### a.    Accusations of Abusing Daughter

To the extent that Plaintiff argues that Defendant "displayed outrageous conduct when stating that [he] [abused] . . . [Child]," [R. 73, p. 3], the Court's previous findings on collateral estoppel, *see supra* § III.A.1., apply to the IIED claim as well. *See generally Buck*, 597 F.3d at 816 (affirming a motion to dismiss granted on res judicata grounds). It is true that the Sixth Circuit has held, in previous litigation involving Plaintiff, that *false* allegations of sexual abuse could support an IIED claim at the motion-to-dismiss stage. *See McIlwain v. Dodd*, No. 22-5219, 2022 WL 17169006, at *7 (6th Cir. Nov. 22, 2022); [R. 73, p. 3 (mentioning, only in a heading, that IIED

- 32 -

"has already been determined to be viable by the Sixth Circuit because accusing someone [of] molesting children goes beyond all possible bounds of decency" (internal capitalization amended))]. However, the Family Court had not yet made its ruling that found Defendant's allegations credible at the time the Sixth Circuit so ruled. *See* [R. 68-1 (finding that Plaintiff sexually abused his daughter in an Order dated November 13, 2024)]; *supra* § III.A.1.; *cf. Simpson*, 397 F. Supp. 3d at 960 ("[I]f the allegations of the Complaint are contradicted by documents attached to or necessarily implicated by the pleadings, the latter controls over the former and a Rule 12(b)(6) dismissal may be based on the documents" (citation modified)). And although the Sixth Circuit credited the pleading's allegation that C.H.F.S. "dismissed a Child Protective Service complaint against him," it did not make any findings about the preclusive effects of that dismissal. *McIlwain*, 2022 WL 17169006, at *7; *cf. supra* § III.A.1. (finding a different C.H.F.S. stipulation not entitled to preclusive effect).

Moreover, it is not outrageous to credibly accuse someone of a crime to the relevant authorities. *Cf. Allen v. Clemons*, 920 S.W.2d 884, 886–87 (Ky. Ct. App. 1996) (finding billboard calling someone a child molester not outrageous after public conviction for sexual abuse).[19] And the Court has already found that Plaintiff could not demonstrate that Defendant was acting in bad faith, maliciously, and/or without reasonable cause when she made the reports. *See supra* § III.A.2., n.11; *S.S.*, 532 F.3d at 459 (requiring a finding that Defendant's conduct was intentional or reckless to state a claim for IIED). As such, the Court will grant Defendant's Motion to Dismiss the IIED claims based on the allegations of the abuse of Child.

---

[19] The Sixth Circuit distinguished *Allen* in Plaintiff's prior case because "there [was] no evidence [ ] that McIlwain was criminally charged with or convicted of child abuse." *McIlwain*, 2022 WL 17169006, at *7. While there is still no evidence of any criminal action, the Court finds *Allen* instructive given that it now has the benefit of reviewing the Family Court's findings, which the Sixth Circuit did not. *Cf. id.*

**b.     Accusations that Plaintiff Molested His Niece and Had Been Convicted of Domestic Violence**

Defendant next argues that the IIED claim should be dismissed for two interrelated reasons based on Kentucky's treatment of IIED as a "gap-filler." *See* [R. 68, pp. 6–7]. First, she argues that the allegations underlying the IIED claim make out other, traditional torts, such as defamation, and that the FAC asserts that her motivation was not exclusively to cause emotional distress. *See id.* Because of this, her next argument is that Plaintiff cannot use IIED's longer statute of limitations to bring what would otherwise be a time-barred defamation claim. *See id.* at 7. Plaintiff responds by asserting that "none of the IIED claims are subsumed by the [d]efamation claims because [they are] not similar conduct." [R. 73, p. 5]. As explained previously, Plaintiff's FAC utterly failed to identify the alleged conduct he specifically believes rises to the level of outrageous conduct for the purpose of causing emotional distress, and nowhere does he allege that any of Defendant's conduct was solely intended to cause him extreme emotional distress. *See Green*, 803 F. Supp. 2d at 655 (explaining that an exception to the "gap-filler" rule exists when conduct is solely intended to cause extreme emotional distress); *see generally* [R. 62]. In any case, the law is clear that, to the extent the IIED claim overlaps with the defamation claims, it is barred. *See, e.g.*, *Grace*, 2009 WL 366239, at *3–4 (dismissing IIED claim when it had the same factual basis as the plaintiff's defamation claim); *Taylor v. Jackson Lewis LLP*, No. 3:13CV-1088-S, 2014 WL 4494254, at *4 (W.D. Ky. Sept. 10, 2014) (same).

To the extent Plaintiff is attempting to assert an IIED claim based on the allegations that Defendant falsely stated that he sexually abused his niece and told Temple University that he had been convicted of domestic violence resulting in the University failing to return his calls in 2022, *see* [R. 73, pp. 3–4], he is barred by the gap-filler rule. *Cf. Grace*, 2009 WL 366239, at *3–4. Defendant argues that the gap-filler rule applies here because these allegations sound in defamation

and Plaintiff "alleges throughout his complaint that [her] false statements and conduct were conducted to obtain custody of their daughter and separate him from his daughter," which "is a separate motivation that is not solely to cause emotional distress." [R. 68, p. 7]. Undoubtedly, these allegations sound in defamation because they involve an allegedly false statement made "sole[l]y for the purpose of placing [Plaintiff] in an unfavorable light." *See* [R. 62, § III ¶ 46]. It is this very basis that Plaintiff asserts for Defendant's alleged statement to CPS that prevents Plaintiff from asserting the exception to the gap-filler rule available only when "'the defendant[] solely intended to cause extreme emotional distress.'" *Estep*, 366 F. Supp. 3d at 887 (quoting *Green*, 803 F. Supp. 2d at 655).[20] Again, at no point has Plaintiff alleged (or argued in his Response) that Defendant's actions were *solely* to cause him emotional distress. *Cf. Bailey*, 2017 WL 3841687, at *4.

Plaintiff's allegation that Defendant "made false statements that [he] was convicted of domestic violence to Temple University . . . which caused [him] to not be asked back by Temple after teaching there in 2019 before and during Covid," [R. 62, § III ¶ 50], also plainly sounds in defamation.[21] It is introduced by the clause, "in addition to making false statements to government entities . . .," which, of course, is the basis for Plaintiff's defamation claims. *Id.*; *see generally*

---

[20] Moreover, the First Amended Complaint alleges that Defendant made this statement to CPS. *See* [R. 62, ¶ III (46)]. Given the cumulative narrative in the First Amended Complaint, it is therefore a reasonable inference that Defendant made this statement in the process of reporting Plaintiff's abuse of Child. *See supra* § III.A.1. Therefore, the purpose was also obvious in that Defendant was providing relevant information in seeking to protect her daughter. *See generally Iqbal*, 556 U.S. at 679 (explaining that determining if a complaint sufficiently alleges a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense" (citation omitted)).

[21] The Court also notes that, in any case, stating that Plaintiff had been convicted of domestic violence is likely not sufficiently "outrageous" to plead IIED given that the Family Court (Division 1) granted Defendant a DVO (*domestic violence* order) which included a finding that "it was established, by a preponderance of the evidence, that an act(s) of domestic violence and abuse . . . ha[d] occurred and may again occur." [R. 11-4, p. 3]; *see also* [R. 62, § III ¶¶ 11–12 (acknowledging the DVOs)]. Although, of course, this is not a *conviction*, the DVO and its findings make it impossible for Plaintiff to plausibly allege that Defendant's behavior "'offends against the generally accepted standards of decency and morality.'" *See S.S.*, 532 F.3d at 459 (quoting *Osborne*, 31 S.W.3d at 914); *cf. Allen*, 920 S.W.2d at 886–87 (finding billboard calling someone a child molester not outrageous after public conviction for sexual abuse).

*supra* § III.A.2. Neither the FAC nor the Response assign a motive to Defendant in making these statements to Temple University. *See generally* [R. 62, § III ¶ 50]; [R. 73, pp. 4–5]. Therefore, because "[P]laintiff merely alleges that emotional distress resulted from [Defendant's] conduct, not that [her] sole purpose in engaging in that conduct was to inflict that distress, the allegations fall outside [the] narrow exception"—for actions "solely intended to cause extreme emotional distress"—"and fail to state a viable IIED claim." *Bailey*, 2017 WL 3841687, at *4. Because "some other tort with adequate relief fits the facts," *Grace*, 2009 WL 366239, at *3, Plaintiff fails to state an IIED claim based on Defendant's alleged statements about Plaintiff molesting his niece or those to Temple University.

The Court also notes that if these alleged statements were made before March 29, 2022, they would have been time-barred. *See supra* § III.A.2.a. An IIED claim's five-year statute of limitations cannot be used to resurrect an otherwise time-barred traditional tort, even if relief is no longer available under that traditional cause of action due to the expiration of the statute of limitations. *See Childers v. Geile*, 367 S.W.3d 576, 581–83 (Ky. 2012); *Taylor*, 2014 WL 4494254, at *4.

Thus, the Court will grant Defendant's Motion to Dismiss the IIED claim to the extent it is based on her alleged statements that Plaintiff abused his niece or those to Temple University.

### c.    Teaching Child to refer to Plaintiff as "Tim" and Changing Child's Name

Two of the remaining asserted bases for the IIED claim are that Defendant taught their daughter to refer to Plaintiff as "Tim" rather than "Daddy," *see* [R. 73, p. 4 (citing [R. 62, § III ¶ 9(S)])], and changed their daughter's name to remove Plaintiff's last name, *id.* (citing [R. 62, § III ¶ 9(T)]).

Defendant seems to assume that these claims are based in other traditional torts and thus argues that the asserted motivation in the FAC, to gain the upper hand in their custody dispute and to alienate his daughter, "is a separate motivation that is not solely to cause emotional distress," so the claim fails. *See* [R. 68, p. 7]; *see also* [R. 62, § III ¶ 9 (listing the allegations as part of Defendant's "nefarious plot to remove Plaintiff from their Daughter's life")]. In other words, Defendant argues that the exception to the "gap filler" rule does not apply here. However, Defendant does not demonstrate how any of these alleged statements or actions "amounts to the commission of one of the traditional torts. . . for which recovery for emotional distress is allowed," *Estep*, 366 F. Supp. 3d at 887, such that the "gap filler" rule would apply, nor is it obvious on its face. For example, the above-cited factual allegations would not form the basis of a defamation claim, as they do not involve any *statements*. It may be, then, that these allegations fall within the "gap" between traditional torts. Therefore, these allegations will not be dismissed under Defendant's "gap-filler" argument at this stage.

Defendant also argues that the IIED claim should be dismissed because it fails to state a claim on the merits. *See* [R. 68, p. 8]. Namely, she asserts that the conduct was not sufficiently outrageous to satisfy the second element of an IIED claim, *see id.*—that the complained-of "conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality." *S.S.*, 532 F.3d at 459 (quoting *Osborne*, 31 S.W.3d at 914 (Ky. 2000)). This is because, she argues, "given that a court has conclusively determined that [Plaintiff] sexually abused their daughter, there is no way Plaintiff can demonstrate that [her] efforts to separate him from his daughter were outrageous, atrocious and utterly intolerable in a civilized society." [R. 68, p. 8]; *see also* [R. 74, p. 2 (arguing that "[a] mother's judicial effort to protect her child from abuse cannot give rise to an IIED claim, particularly when a court has

determined that the child was abused," because "[a]ny contrary result would effectively thwart parents from attempting to protect their children from abuse and transform virtually every contentious domestic violence case and custody dispute into a civil lawsuit")]; *id.* ("[T]he act of changing the child's name do[es] not rise to the level of IIED, and the proper venue to contest the name change would have been with the court that was petitioned to change it.").

In his Response, Plaintiff offers no meaningful rebuttal, offering only a vague, conclusory statement that "a court could find the conduct . . . so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and be regarded as atrocious, and utterly intolerable in a civilized community." [R. 73, pp. 4–5 (citation omitted)].

In Kentucky, IIED "is not available for petty insults, unkind words and minor indignities. Nor is it to compensate for behavior that is cold, callous and lacking sensitivity." *Osborne*, 31 S.W.3d at 914 (internal quotation marks and citations omitted). As this Court has previously explained, "[t]he Kentucky Supreme Court has 'set a high threshold' for an IIED claim," and

> [t]he type of conduct Kentucky courts have recognized as "outrageous and intolerable" is—to put it lightly—appalling. Examples include "agree[ing] to care for plaintiff's long-time companion-animals, two registered Appaloosa horses, and then immediately s[elling] them for slaughter,"; "subject[ing] plaintiff to nearly daily racial indignities for approximately seven years,"; and "intentionally fail[ing] to warn the plaintiff for a period of five months that defendant's building, in which plaintiff was engaged in the removal of pipes and ducts, contained asbestos."
>
> Even examples of conduct that didn't meet the legal threshold for outrageous behavior are ones that could fairly be described in common parlance as extreme. IIED liability didn't apply, for example, to a nurse who ordered a woman, "who was hysterical over the fact that she had just delivered a stillborn child in her hospital room, to 'shut up' and then inform[ed] her that the stillborn child would be 'disposed of' in the hospital." Nor did a pastor who impregnated his parishioner's wife commit "outrageous and intolerable" conduct under Kentucky law giving rise to IIED liability.

*Starks v. Mayfield Consumer Prods., LLC*, No. 5:22-CV-185-BJB, 2023 WL 4875885, at *5 (W.D. Ky. July 31, 2023) (internal citations omitted) (citing *Stringer v. Wal-Mart Stores, Inc.*, 151

S.W.3d 781, 789–91 (Ky. 2004), *overruled on other grounds by Toler*, 458 S.W.3d 276) (collecting cases).

Upon evaluating Plaintiff's allegations that Defendant taught Child to refer to Plaintiff as "Tim" and changed her name, the Court does not find that such conduct meets the "'high threshold' for an IIED claim" such that it "'is utterly intolerable in a civilized community,'" *see id.* (quoting *Stringer*, 151 S.W.3d at 791), and will therefore grant Defendant's Motion to Dismiss the IIED claim to the extent it is brought based on these actions. Neither teaching a child to refer to their parent by their given name nor changing a child's name "'deviat[es] from all reasonable bounds of decency,'" *see id.* (alteration in original) (quoting *Stringer*, 151 S.W.3d at 791), and IIED "does not cover conduct that is cold, callous, and lacking sensitivity." *Osborne*, 31S.W.3d at 914.

In particular, as to the name change, it appears that because Plaintiff allegedly did not consent to changing Child's name, a court would have had to find, by a preponderance of the evidence, that the change was in "the best interests of the child." *See* Ky. Rev. Stat. § 401.020; *Likins v. Logsdon*, 793 S.W.2d 118, 122 (Ky. 1990); *see generally* [R. 62, § III ¶ 9(T) (explaining that the name change took place in Kentucky and that he did not consent)]. The court presumably made this finding despite Kentucky's recognition that a "father has a right and a protectable interest in having his children bear his name which is not forfeited on insubstantial grounds," and courts "require a parent seeking to attenuate the relationship between her former [partner] and his child to present objective and substantial evidence of just cause and significant detriment to the child before the child's name is changed." *Likins*, 793 S.W.2d at 122; *see also Morgan v. Morgan*, No. 2019-CA-000897-MR, 2020 WL 3605858, at *2 (Ky. Ct. App. June 26, 2020) (affirming trial court's decision to grant mother's petition to change children's names after she testified that she witnessed father sexually abusing their daughter). Defendant, then, is correct that "the proper

venue to contest the name change would have been with the court that was petitioned to change it." [R. 74, p. 2]. Plaintiff cannot plausibly allege that conduct authorized by a court and found to be in his child's best interest was "outrageous."

### d.    Creating "Child Pornography"

The final allegation purportedly underlying Plaintiff's IIED claim is that Defendant and created "child pornography" involving their daughter. *See* [R. 73, p. 4 (citing [R. 62, § III ¶ 20)])]. As a matter of context, it appears that the videos to which Plaintiff is referring are those of their daughter—who was, in some videos, unclothed—describing her abuse as shown in the Family Court hearing. *Compare* [R. 62, § III ¶¶ 19–23], *with* [R. 68-1, pp. 2–4, 7–8, 10 (discussing the videos shown at the evidentiary hearing)]. Defendant makes the same arguments discussed previously about the gap-filler rule, *see* [R. 68, p. 7]; *supra* § III.A.3.c., but the Court similarly finds no apparent "traditional tort" under which this allegation could fall. Nonetheless, Plaintiff has also failed to state an IIED claim based on this alleged conduct.

As an initial matter, Plaintiff has not plausibly alleged that Defendant created "child pornography" of their daughter. See [R. 62, § III ¶¶ 18–23]. As Plaintiff is no doubt aware, as he cited the relevant federal statute involving child exploitation crimes, see [R. 62, § III ¶ 20 (citing 18 U.S.C. § 2251)], "child pornography" is a legal term with a precise definition. *See* 18 U.S.C. § 2256(8). The only descriptions of these videos provided by Plaintiff involve the legal conclusion that they are "pornographic" and "child pornography," and the bare assertions that Child was "in the bathtub" and "naked" and that the video contained "sexual acts." See [R. 62, ¶¶ 19–23].

Relying on the federal definitions as cited by Plaintiff, "child pornography" involves the "visual depiction . . . of a minor engaging in sexually explicit conduct." 18 U.S.C. § 2256(8)(A). The only feasible category of "sexually explicit conduct" at issue in this case is the "lascivious

exhibition of the anus, genitals, or pubic area." *Id.* § 2256(2)(A)(v). The Sixth Circuit has

enumerated several factors for analyzing whether a depiction is lascivious, which, generally, focus

on whether the depiction was intended to be suggestive and elicit a sexual response, including the

circumstances under which it was made. *See generally United States v. Jakits*, 129 F.4th 314, 322–

23 (6th Cir. 2025); *see also United States v. Ogden*, No. 06-20033, 2008 WL 2247074, at *3 (W.D.

Tenn. May 28, 2008) (explaining that nudity alone is not lascivious (collecting cases)).

Based on Plaintiff's allegations in the FAC, the videos do not contain a lascivious depiction

of Child. For example, there are absolutely no allegations in the FAC to suggest that the videos

were "suggestive," suggested "sexual coyness or a willingness to engage in sexual activity," or

were "intended or designed to elicit a sexual response." *Contrast Jakits*,129 F.4th at 323 (citation

modified), *with* [R. 62, § III ¶¶ 18–23]. As such, Plaintiff's conclusory allegations concerning

child pornography are insufficient to plausibly allege that Defendant created child pornography

involving their daughter and therefore cannot constitute an IIED claim. *See generally Iqbal*, 556

U.S. at 678–79 (explaining that a plaintiff may not rely on "mere conclusory statements" and that

determining whether a complaint sufficiently alleges a plausible claim for relief is "a context-

specific task that requires the reviewing court to draw on its judicial experience and common

sense" (citations omitted)).

This is especially true when viewed in the context of the Family Court proceedings. The

FAC leaves no question that the videos were made by Defendant to document her daughter's

disclosure that Plaintiff molested her, *see* [R. 62, § III ¶¶ 19–23], and that the videos were taken

as probative evidence in Family Court matters because Plaintiff alleges that they "resulted in

blocking [him] from his daughter," *see id.* ¶ 20. Moreover, the Family Court Order from November

13, 2024, described the videos and discussed their evidentiary value towards the court's finding

that Plaintiff sexually abused Child. *See generally* [R. 68-1]. Defendant offered the videos at the DVO hearing, and Plaintiff did not object. *See id.* at 2. Plaintiff stated, in fact, that the videos were "the most important part of his case [ ] the video[s] [were], in [his] view, child abuse." *Id.* Despite Plaintiff's arguments that the videos were "inappropriate" and his extensive cross-examination of Defendant about making them and her motivations, *see id.* at 3, 8, the Family Court judge found that "although the[] recordings may be a bit unorthodox, . . . [Defendant] [was] credible that she recorded the videos so [Child] would be believed." *Id.* at 10. Again, there is no plausible allegation that Defendant created "child pornography" on which Plaintiff may state a claim for IIED.

Even assuming that a defendant creating child pornography featuring a plaintiff's child would be outrageous enough to satisfy the pleading requirements of IIED, it is clear that this is not what occurred in this case. Because the Court finds that Plaintiff has not plausibly alleged that Defendant created "child pornography," her conduct in making the videos does not rise to the level of outrageousness needed to state a claim for IIED when viewed in context, as the Court must. *See generally Iqbal*, 556 U.S. at 679.

In any case, creating the videos, as viewed in the context of Plaintiff's FAC and the Family Court proceedings, was not outrageous conduct even disregarding Plaintiff's legal conclusions that they were "child pornography." A mother recording her child's disclosure of abuse for use in a future investigation is not "outrageous and intolerable in that it offends against the generally accepted standards of decency and morality." *S.S.*, 532 F.3d at 459 (quoting *Osborne*, 31 S.W.3d at 914 (Ky. 2000)). Therefore, Plaintiff cannot plausibly allege outrageous conduct sufficient to underlie a claim for IIED.

The Court, having found Plaintiff has failed to plausibly state a claim for IIED on which relief could be granted on any grounds, will grant Defendant's Motion to Dismiss Count 2.

## B.    Real Estate and Contract Claims (Counts 4–7) – Statute of Frauds

Plaintiff asserts the following real estate claims arising out of the alleged agreement with Defendant to buy and renovate a property in Louisville ("the property") and then share the rental income: breach of contract, [R. 62, § VII], breach of the covenant of good faith and fair dealing, *id.* § VIII, promissory estoppel, *id.* § IX, and unjust enrichment, *id.* § X.[22] According to the FAC, the parties agreed to purchase the property in Louisville in 2018 "as an investment" that Defendant would "live in while renovating it to create three separate residences that would generate rental income." *Id.* § III ¶ 9(B), (D). Plaintiff alleges that he paid the down payment of $3,000, an additional $20,979.38 towards the equity and closing costs, and an unknown sum of money for extensive renovations. *See id.* ¶ 9(E)–(G). The deed to the property, however, is in Defendant and her mother's names because they "had a better credit rating that could secure a mortgage, among other issues." *Id.* § VII(D). The parties allegedly agreed that, "[a]fter [Plaintiff's] outlay of costs were reimbursed, both [he] and [Defendant] were to split the rental proceeds from Airbnb and direct payments from renters," but "from July 28, 2016 to present, [Defendant] has collected all payments . . . [and] has not shared any of the payments," thereby "violat[ing] the joint venture agreement . . . to [Plaintiff's] immediate economic detriment."[23] *Id.* § VII (L)–(N), (R).

Defendant first argues that the breach of contract claim must fail because any alleged agreement was not in writing and therefore violated the statute of frauds. [R. 68, p. 8]. In Kentucky,

---

[22] The Court notes that the allegations in Count Four contain extraneous allegations unrelated to the purported agreement involving the property and division of rental proceeds. *See, e.g.*, [R. 62, ¶ VII(G)–(K), (O)–(P)]. The Court will not permit the Plaintiff to relitigate domestic disputes under the guise of a breach of contract claim. Although the Court will deny Defendant's Motion as it relates to the real estate claims and allow the claims to proceed to discovery, discovery will be limited to information relevant to the claims at issue as governed by Federal Rule of Civil Procedure 26(b). *See* Fed. R. Civ. P 26(b) ("[P]arties may obtain discovery regarding any nonprivileged matter *that is relevant* to any party's claim or defense and proportional to the needs of the case." (emphasis added)).

[23] The Court assumes that "July 28, 2016" is a scrivener's error because the First Amended Complaint asserts that the property was not purchased until May 2018. *See* [R. 62, ¶ III(9)(E)].

the statute of frauds is an affirmative defense and states that certain types of agreements must be in writing to be enforceable. *See Back v. Chesapeake Appalachia, L.L.C.*, 773 F. App'x 294, 296 (6th Cir. 2019); Ky. Rev. Stat. § 371.010. Specifically, Defendant argues that the statute's provision requiring that "any promise, agreement, or contract for any commission or compensation for the sale or lease of any real estate or for assisting another in the sale or lease of any real estate . . . be in writing and signed by the party to be charged therewith" precludes a finding that the parties had an enforceable contract. § 371.010(8); [R. 68, p. 8]. Plaintiff cites to a different provision of the statute, however, and argues that because § 371.010(7) states that agreements "not to be performed in one year" must be in writing, and the parties' agreement could be—and was—performed within one year, the statue of frauds does not apply. *See* [R. 73, p. 12 (citing [R. 62, § III ¶ 9(A)–(H)])]; § 371.010(7); *see also Sawyer v. Mills*, 295 S.W.3d 79, 84 (Ky. 2009), *as modified* (Nov. 2, 2009) ("In construing the Statute of Frauds, the general rule is that, if a contract may be performed within a year from the making of it, the inhibition of the Statute does not apply, although its performance may have extended over a greater period of time." (internal citation and quotation marks omitted)).

First, based on Plaintiff's own allegations, it is unclear whether any purported agreement could be performed in one year since it apparently involved the sharing of rental payments for years. *See* [R. 62, § VII(H), (L)–(M)]. But even assuming that any such agreement could be performed in one year, Plaintiff cites no authority, nor could the Court locate any, to suggest that when an agreement falls outside of one provision of the statute of frauds none of the other provisions apply. In fact, the statute explicitly uses "or" between each provision, *see generally* § 317.010, and courts consider them separately. *See, e.g., Davis v. Davis*, 343 S.W.3d 610, 615 (Ky. Ct. App. 2011) (considering separately § 371.010(7) and § 371.010(8)). That is to say, even

assuming the alleged agreement could have been completed in one year and was completed in one year (and therefore did not violate subsection (7) of the statute), that does not mean that it did not implicate subsection (8), the section of the statute of frauds requiring agreements involving "compensation for the sale or lease of any real estate" to be in writing. § 371.010(8); *see also* [R. 74, p. 4].

Regardless, the Court will deny Defendant's motion to dismiss under the statute of frauds at this time. Despite Defendant's contention that because "Plaintiff does not allege and attach to his complaint any written agreement signed by [Defendant] providing that she agreed to split rents with him . . . the claim fails," [R. 68, p. 8], Plaintiff was under no obligation to do so because the statute of frauds is an affirmative defense. *Cf. Back*, 773 F. App'x at 296 ("[Defendant] contends that [Plaintiff] did not plead facts adequate to address the statute of frauds. But [he] did not need to plead those facts because the statute of frauds is an affirmative defense for [Defendant] to raise." (first citing Fed. R. Civ. P. 8(c); then citing *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012))).

The Court need not, therefore, determine whether the text messages attached to the FAC and Response would, as Plaintiff argues, satisfy a writing requirement should one be necessary. *See* [R. 73, pp. 12–13 (arguing text messages of the parties' discussions about rental prices should satisfy any writing requirement and relying on *CAM Tr. v. Revere High Yield Fund, LP*, No. A-1250-17T3, 2018 WL 5810296, at *3–4 (N.J. Super. Ct. App. Div. Nov. 7, 2018), a New Jersey case finding email communications satisfied the New Jersey statute of frauds)]. That said, however, the Court finds it highly unlikely such text messages would meet the requirements of a writing under the statute of frauds. First, Kentucky has suggested it may not accept text messages regarding contract terms required to be in writing. *See Sisco v. Allen*, No. 2021-CA-1108-MR,

2022 WL 4587629, at *6 (Ky. Ct. App. Sept. 30, 2022) (finding that contract that required any modifications to be in writing could not be modified by "vague text messages," "[e]ven if the text messages did allude to an amendment"). In any case, it is clear that, even if text messages can be accepted as writings, they "must show all of the essential terms of the contract" as is required of writings to satisfy the statute of frauds. *See Anderson v. Pine S. Cap., LLC.*, 177 F. Supp. 2d 591, 601 (W.D. Ky. 2001) (citation omitted). The text messages to which Plaintiff refers, *see* [R. 62-1, pp. 1–5], involve the parties discussing the price at which they should rent an apartment—presumably, the property in Louisville—on one occasion. *See id.* The text messages do not discuss most of the terms of the agreement alleged by Plaintiff, including those which he alleges Defendant has breached, namely that he would be reimbursed for his initial outlay of expenses or that they would share the rental proceeds. *See id.*; [R. 62, § VII(L)–(M)].

Additionally, the Court notes that Plaintiff repeatedly refers to the parties' agreement as a "joint venture." *See, e.g.*, [R. 62, §§ VII, VIII]. Kentucky appears to follow the majority rule that joint venture and partnership agreements, even those involving real estate, need not be in writing. *See Jones v. Nickell*, 179 S.W.2d 195, 196–97 (1944); *Bell v. Jefferson*, No. 5:18-CV-32-CHB, 2021 WL 1233457, at *17 n.10 (E.D. Ky. Mar. 31, 2021) (finding "it would make sense that joint ventures in Kentucky need not satisfy the Statute of Frauds," after examining "Kentucky case law suggesting that 'partnership agreements are generally not within the statute of frauds,'" and explaining that "joint ventures are a type of partnership 'governed by the princip[les] of partnership ship law'" (first quoting *Dutton v. Dutton*, No. 2012-CA-001403-MR, 2014 WL 631572, *4 (Ky. Ct. App. Feb. 14, 2014), then quoting *Abbott v. Chesley*, 413 S.W.3d 589, 604 (Ky. 2013))); *see generally* 72 Am. Jur. 2d. *Statute of Frauds* § 67 (2025). To the extent Count Four alleges the breach of a joint venture agreement, the statute of frauds may not be implicated. *See Jones*, 179

S.W.2d at 196–97; *Bell*, 2021 WL 1233457, at *17 n.10; 72 Am. Jur. 2d. *Statute of Frauds* § 67 (2025); *see also* [R. 62, § VII (Plaintiff alleges Defendant "breached the agreements by failing to share the revenue generated in accordance with the joint venture"). In any case, this issue was not raised by the parties, but the Court thought it prudent to bring it to their attention, especially given the differing allegations in the FAC about a "joint venture" and a "contractual relationship." *See generally* [R. 62, § VIII].[24]

Defendant additionally argues that the claims for promissory estoppel, unjust enrichment, and the breach of the covenant of good faith and fair dealing "must also be dismissed as violative of the statute of frauds. Otherwise, the statute and its purpose would be eviscerated and meaningless." [R. 68, pp. 8–9 (internal citation omitted)]. This argument fails because the Court has found that the statute of frauds did not bar the contract claim, at least not at this stage of the litigation. In any case, it appears that, should the statute of frauds bar a contract claim, it *would* preclude Plaintiff's promissory estoppel claim, but *not* his unjust enrichment claim. *Contrast 859 Boutique Fitness LLC v. Cyclebar Franchising, LLC*, No. 5:16-CV-018-KKC, 2016 WL 2599112, at *2 (E.D. Ky. May 5, 2016), *aff'd on other grounds*, 699 F. App'x 457 (6th Cir. 2017) (holding that "promissory estoppel cannot be used to enforce an agreement that is otherwise left unenforceable by Kentucky's statute of frauds," and discussing *Sawyer*, 295 S.W.3d 79), *and Cent. Jersey Constr. Equip. Sales, LLC v. LBX Co., LLC*, No. 22-5581, 2023 WL 3093575, at *8 (6th Cir. Apr. 26, 2023) (citing *Sawyer*, 295 S.W.3d at 90, for the proposition that the Kentucky Supreme Court "has already expressed hesitancy to adopt a broad view of promissory estoppel that would eliminate other contract-law limitations, such as the statute of frauds"), *with Shapira v. Rare*

---

[24] The Court takes the opportunity to mention that, in its prior Order, *see* [R. 61], it encouraged the parties to address certain issues in their forthcoming Motion to Dismiss briefing. *See id.* at 17–18. The parties largely failed to do so. The parties are once again encouraged to address the questions identified by the Court in order to proceed accurately and efficiently in resolving this case.

*Character Whiskey Co., LLC*, No. 3:23-CV-602-RGJ, 2024 WL 1181016, at *7 (W.D. Ky. Mar.

18, 2024) ("Kentucky courts do not bar unjust enrichment claims as a matter of course when an

agreement does not comport with the statute of frauds." (collecting cases)), *and Eusner v. Ellis*

*Sullivan*, No. 521CV00074GFVTMAS, 2023 WL 3326100, at *3 (E.D. Ky. May 9, 2023) (citing

*Cougler v. Fackler*, 510 S.W.2d 16, 18 (Ky. 1974)) (same). Importantly, however, the Court notes

that the Kentucky Supreme Court has held that "'where the statute of frauds is clear and

unambiguous . . . equitable relief should only be granted under the most limited of circumstances,

lest the Court run afoul of judicially amending the statute in violation of separation of powers.'"

*Shapira*, 2024 WL 1181016, at *7 (alteration in original) (*quoting Farmers Bank & Tr. Co. of*

*Georgetown, Ky. v. Willmott Hardwoods, Inc*., 171 S.W.3d 4, 10 (Ky. 2005)).

Finally, Defendant argues that the claim for breach of the covenant of good faith and fair

dealing fails because "Kentucky does not recognize any separate claim for breach of the covenant

of good faith and fair dealing absent an enforceable contract." [R. 68, p. 9 (citing *Ennes v. H&R*

*Block E. TaxServices, Inc.*, 2002 WL 226345, at *3–4 (W.D. Ky., Jan. 11, 2002))]. Defendant is

correct that, in Kentucky, "without a contract, there can be no breach of the duty of good faith and

fair dealing." *Bisig v. Time Warner Cable, Inc*., No. 3:14-CV-36-DJH-DW, 2018 WL 1476679, at

*6 (W.D. Ky. Mar. 26, 2018), *aff'd*, 940 F.3d 205 (6th Cir. 2019) (citing *Auto Channel, Inc. v.*

*Speedvision Network, LLC*, 144 F. Supp. 2d 784, 791 (W.D. Ky. 2001)) (granting summary

judgment for claim for breach of the duty of good faith and fair dealing after the plaintiff failed to

demonstrate the existence of a contract). However, "although a breach of this covenant does not

create a standalone cause of action, it may serve as the basis for a breach of contract claim," *Morris*

*v. Tyson Chicken, Inc*., 497 F. Supp. 3d 282, 288–89 (W.D. Ky. 2020), and courts regularly permit

it to be pled along with a claim for breach of contract. *See, e.g.*, *MGPI of Ind., LLC v. City of*

*Williamstown*, No. CV 24-23-DLB-CJS, 2024 WL 3625658, at *8 (E.D. Ky. July 31, 2024);

*Assoc'd Warehousing, Inc. v. Banterra Corp.*, No. 5:08-CV-00052-TBR, 2008 WL 4180260, at

*3 (W.D. Ky. Sept. 8, 2008) (refusing to dismiss claim for breach of the implied covenant of good

faith and fair dealing when "a disputable issue exist[ed] as to whether or not" the parties had a

valid contract). In other words, the breach of this covenant can form the basis for a separate breach

of contract claim. *MGPI of Ind.*, 2024 WL 3625658, at *8. Therefore, because the Court did not

dismiss Plaintiff's breach of contract claim, it will not dismiss the claim for the breach of the

covenant of good faith and faith dealing at this time. *Cf. Assoc'd Warehousing*, 2008 WL 4180260,

at *3.

Neither party addresses the merits of these claims and the Court declines to do so of its

own accord. Accordingly, the Court will deny Defendant's Motion to Dismiss as it relates to the

real estate claims, all of which may proceed.

### C.    Remaining Matters

The Court will now address three remaining issues. First, Plaintiff's third asserted cause of

action is punitive damages. [R. 62, § VI]. Defendant moves to dismiss this claim because it "is not

a claim but merely a request for relief." [R. 68, p. 9 (citing *Bowden v. City of Franklin*, 13 F. App'x

266, 276 (6th Cir. 2001))]. Plaintiff does not address this issue in his Response, *see* [R. 73],

apparently conceding this point. *Cf. Spring House*, 2022 WL 17406310, at *6.  Defendant's Motion

to Dismiss Count 3 will be granted because, in Kentucky, "a claim for punitive damages is not a

separate cause of action, but a remedy potentially available for another cause of action." *Dalton v.

Animas Corp.*, 913 F. Supp. 2d 370, 378 (W.D. Ky. 2012); *see also Bowden*, 13 F. App'x at 276

("Count VI ["Punitive Damages"] is not a claim for relief but a request for punitive damages.").

Second, to the extent Plaintiff is asserting claims against "John Doe 1-5, individually, and inclusive," *see* [R. 62, p. 1], the Court will dismiss those claims. In *Apple*, the Sixth Circuit explained that,

> [g]enerally, a district court may not *sua sponte* dismiss a complaint where the filing fee has been paid unless the court gives the plaintiff the opportunity to amend the complaint . . . Nevertheless, a district court may, at any time, *sua sponte* dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion.

183 F.3d at 479 (citations omitted); *see also Stigall*, 2009 WL 3739385, at *3 ("[*Apple*] authorizes a district court to conduct a limited screening procedure and to dismiss, *sua sponte*, a fee-paid complaint filed by a non-prisoner if it appears the allegations are 'totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion.'" (quoting *Apple*, 183 F.3d at 479)). The FAC only mentions "John Does 1-5" in the caption of the FAC. *See* [R. 62, p. 1]. The FAC also states it is "against Defendant Brooke Leah Berry." *Id.* Not a single factual allegation or asserted cause of action mentions a John Doe defendant. *See generally id.* "In short, [ ] Plaintiff has failed to state a claim upon which this Court may grant relief." *Stigall*, 2009 WL 3739385, at *3; *see also Cohen v. U.S. Dep't of Treasury*, No. 1:18 CV 208, 2018 WL 2299155, at *2 (N.D. Ohio May 21, 2018) (finding, when screening a *pro se* complaint under 28 U.S.C. § 1915(e), that the plaintiff "fail[ed] to meet basic notice pleading requirements, when "[h]e [did] not mention any of the [d]efendants in the documents comprising the Complaint, nor [did] he specify any legal cause of action entitling him to relief," because a "[c]omplaint must give the [d]efendants fair notice of what the [p]laintiff's claims are and the factual grounds upon which they rest" (citing *Bassett*, 528 F.3d at 437 (6th Cir. 2008))). "'A complaint is frivolous when it lacks an arguable basis either in fact or in law,'" and Plaintiff's FAC contains absolutely no basis in either fact or law for legal relief against the John Doe defendants. *See Lawrence v. Priest*, No. 1:23-CV-

356, 2023 WL 3871922, at *1 (W.D. Mich. Apr. 17, 2023), *report and recommendation adopted sub nom. MacPherson v. Priest*, No. 1:23-CV-356, 2023 WL 3316871 (W.D. Mich. May 9, 2023) (quoting *Abner v. SBC Ameritech*, 86 F. App'x 958, 958 (6th Cir. 2004)) (dismissing plaintiff's complaint *sua sponte* under *Apple*). Plaintiff's claims against the John Doe defendants—to the extent they exist—plainly "lack the legal plausibility necessary to invoke federal subject matter jurisdiction," *Apple*, 183 F.3d at 780, and are therefore dismissed.[25]

Finally, the Court notes that Plaintiff's filings in this case, including his Response to the instant Motion to Dismiss, contain remarks that are unprofessional and generally evince conduct inappropriate for persons appearing in federal court, including *pro se* litigants. *See, e.g.*, [R. 73, p. 2 ("[Defendant] has demonstrated in a very real way as Shakespeare wrote that hell will have no fiery like a woman scorn" (internal quotation marks omitted))]; *id.* at 6 ("Defendant's depiction of Plaintiff is baseless, out of character, and/or borders on the edge of 'One Flew Over' behavior"). As explained by the Sixth Circuit,

> as an officer of the court, [counsel] is expected to treat other parties in the case (as well as their counsel) with courtesy and professionalism. Careful research and cogent reasoning, not aspersions, are the proper tools of our trade. That is of course not to say that legal documents must be written in dry legalese. Nor is it to criticize passionate and forceful advocacy in aid of a client's cause . . . But just as one cannot equate contempt with courage or insults with independence, we cannot dismiss the disparaging statements in this case as mere stylistic flourishes or vigorous advocacy.

*Bearden v. Ballad Health*, 967 F.3d 513, 519 (6th Cir. 2020) (internal citations and quotation marks omitted); *see also Qiu v. Bd. of Educ. of Scott Cnty.*, No. 521CV00197GFVTEBA, 2022 WL 18587705, at *4 (E.D. Ky. Nov. 9, 2022), *report and recommendation adopted*, No. 5:21-CV-

---

[25] The Court also notes that Rule 4(m) of the Federal Rules of Civil Procedure provides a plaintiff 90 days to effectuate service on a defendant. *See* Fed. R. Civ. P. 4(m). As explained, the initial Complaint was filed on March 16, 2023, *see* [R. 1], the clerk issued summons on March 29, 2023, *see* [R. 8]. Far more than 90 days have passed, and Plaintiff has made no effort to serve or identify the unnamed defendants.

00197-GFVT, 2023 WL 358244 (E.D. Ky. Jan. 23, 2023) (explaining that "[*p*]*ro se* litigants are [ ] obliged to show appropriate courtesy and respect[,] . . . [u]nnecessary ad hominem attacks have no place in a proper court filing," and parties are "not entitled to . . . harass [their] opponent[s]." (citation modified)).

Plaintiff is thus WARNED that "the Court maintains the power to strike the filings from the record or impose appropriate sanctions if a *pro se* litigant files motions or pleadings that are frivolous, harassing, or fail to exhibit the respect and decorum expected of all litigants that come before the Court." *Qiu*, 2022 WL 18587705, at *6; *see also Adamczyk v. Sch. Dist. of City of Hamtramck Pub. Sch.*, 667 F. Supp. 3d 534, 559 (E.D. Mich. 2023) (warning that "although the [c]ourt could indeed levy sanctions on both parties for the name-calling and unprofessionalism," it "simply warn[ed] the parties" that filings "must adhere to the level of civility and professionalism expected [ ] in the federal courts," or counsel would face "the imposition of harsh monetary sanctions").

## IV.    CONCLUSION

Accordingly, the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED** as follows:

1. Defendant Berry's Motion to Dismiss, [**R. 68**], is **GRANTED IN PART** and **DENIED IN PART**.

   a. The Motion is **GRANTED** to the extent that the following claims are **DISMISSED**: Plaintiff's defamation claim; Plaintiff's IIED claim; Plaintiff's punitive damages claim.

   b. The Motion is **DENIED** as to the real estate claims, which remain pending.

2.   To the extent that the First Amended Complaint attempts to assert claims against "John

Doe 1-5," those claims are **DISMISSED without prejudice.**

This the 1st day of August 2025.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

cc: Counsel of Record
     Plaintiff, *pro se*